LOUIS LARAMEE v. W. A. TANNER.[1]

June 29, 1897.

Nos. 10,610—(197).

Subscription Contract—Losses—Joint or Several Obligation.

A certain subscription, by which, in substance, each signer agrees to pay the sum set opposite his name, to defray any loss or excess of expenses above receipts of a certain public enterprise about to be undertaken, *held,* from its language, to require a pro rata apportionment of such loss among all the subscribers; and, in an action to recover on such subscription, a complaint which does not show the amount of such loss and the total amount subscribed, and merely alleges that an assessment was duly made, does not state a cause of action. *Held,* further, the signers of the instrument are not joint promisors, but can be sued separately.

Principal and Agent—Individual Act of Agent.

Complaint construed. An instrument signed, "R. F. Jones, Secy.," *held,* under the circumstances, to be prima facie the individual act of Jones. Certain words of description in an order rejected as false and surplusage.

Subscription Contract—Guaranty—Statute of Frauds.

*Held,* the liability of the subscribers on said instrument is not secondary to the liability of some one else, but the intention is to make the subscribers, to the extent of the amount subscribed by each, ultimately and solely liable for such loss; and the subsequent carrying out of the undertaking and the incurring of the risk of such loss by the promisee is sufficient consideration for such subscription, and no other consideration need

[1] Reported in 71 N. W. 1028.

be expressed in the instrument, and the contract is not within the statute of frauds.

**Equitable Assignment—Order—Joinder of Assignor.**

The amount of the assessment against defendant on said subscription is claimed to be $375. The promisee therein gave plaintiff an order on defendant for $350, reciting in the order that the same is "the amount of your assessment to subscription to guaranty fund." *Held*, the order is an equitable assignment of the fund, at least pro tanto; but the order on its face purports to be for the whole assessment, and it must be presumed that plaintiff bargained for the $350 as the whole amount due, and is entitled to proceed alone and without joining the drawee of the order, and unless the latter intervenes he will waive his right to collect the balance of $25, and therefore, on the facts appearing, there is not a defect of parties plaintiff.

**Estoppel—Credit on Faith of Subscription.**

*Held*, the fact that plaintiff may have seen the subscription list before he gave credit to the promisee therein is immaterial.

**Cross-Examination—Matters Gone Into in Direct Examination.**

*Held*, it was error to refuse to permit defendant to cross-examine plaintiff's witness as to matters bearing on the question of whether or not the assessment was properly made.

Appeal by defendant from an order of the municipal court for Minneapolis, W. A. Kerr, J., denying his motion for a new trial, after a trial before the court without a jury. Reversed.

*John M. Rees*, for appellant.

*P. M. Babcock*, for respondent.

CANTY, J.

The complaint in this action alleges: That the Minneapolis Driving Club is, and was during the times therein stated, a corporation, and R. F. Jones was its secretary. That in March, 1895, it proposed to give in July of that year a race meeting on its race track. "That for the purpose of inducing owners of horses to enter in the same, and to contest in the said races, the said corporation offered certain purses for the horse or horses winning in such contest. That in the month of March, 1895, the said defendant, among others, for the purpose of inducing the owners of horses contesting in said races to enter said horses in said races, signed and executed a written instrument in words and figures as follows, viz:

" 'To Whom It May Concern: We, the undersigned, for value, hereby'agree to pay to R. F. Jones or order the sums set opposite our respective names, or any part thereof, as called upon, provided that no call be made only in case of shortage in the meeting to be held on the grounds of the Minneapolis Driving Club, July 1 to 6, inclusive, A. D. 1895. It being fully understood that said call shall cover only the regular expenses of running said meeting, and paying the purses and stakes for the same. It is further understood and provided that not less than twenty-five hundred dollars ($2,500.00) shall be subscribed, and that no part of the subscription shall be called for until found needed, and not then unless the full amount of twenty-five hundred dollars ($2,500.00) is subscribed.
" '_____.
" 'W. A. Tanner, $500.
" '_____.' "

"That more than $2,500 was thus subscribed by the defendant and others. * * * That such meeting was given by said Jones, in the name of said corporation, upon the race track of said corporation in said city of Minneapolis upon and between the 1st and 6th days of July, 1895. That there was not received at said meeting, either by said Jones or by the said Minneapolis Driving Club, a sufficient amount to pay the purses won by horses contesting in such races and the expenses of said meeting, and that, in accordance with said instrument so signed by said defendant, an assessment was duly levied against all of the signers of said instrument, and that the amount thus assessed against said defendant was the sum of three hundred and seventy-five dollars ($375.00), and that said defendant knew of such assessment at the time it was made, and fully acquiesced in the same."

It is further alleged that plaintiff entered a horse at said race; that said horse won a purse of $450, and that no part of the same has been paid, except the sum of $137.50; and that Jones made and gave to plaintiff an order on defendant in words and figures as follows:

"Minneapolis, Minn., ——— 8, 1895.
"W. A. Tanner, Esq.: Please pay to L. Laramee or order the sum of three hundred and fifty dollars ($350.00), the amount of your assessment to subscription of guaranty fund of the summer meeting of the Minneapolis Driving Club for the season of 1895. This amount is to pay winnings of Mr. Laramee at said meeting.
"Respectfully yours,
"R. F. Jones, Secy."

It is further alleged that plaintiff demanded payment of this order from defendant, and that the latter refused to pay the same, and judgment is demanded against him for the balance due plaintiff. The answer admits that defendant signed the instrument first above set out, and, so far as here material, it is otherwise a general denial.

At the opening of the trial, defendant objected to the introduction of any evidence, on the ground that the complaint does not state a cause of action. The objection was overruled. Defendant excepted. At the close of the evidence, the court found for plaintiff, and from an order denying a new trial defendant appeals.

We are of the opinion that the court erred in overruling said objection. Defendant did not agree to pay $500 if there was a deficiency, regardless of the amount of that deficiency, and regardless of the amounts which others liable in like manner should also pay. The instrument signed by defendant contemplated a pro rata assessment upon all the subscribers for the amount of such deficiency, if the same was less than the total amount of the sums subscribed. The instrument provides that the subscribers agree to pay the sums set opposite their names, "or any part thereof, as called upon, provided that no call be made only in case of shortage"; "it being fully understood that said call shall cover only" certain expenses, and "that no part of the subscription shall be called for until found needed."

The signers of this instrument were not joint promisors. Gibbons v. Bente (on rehearing) 51 Minn. 499, 53 N. W. 756. Each one can be sued separately, the amount due from any one can be separately assigned, and the order set out, being drawn on the special fund, was an equitable assignment of the same to plaintiff. But it is not alleged in the complaint how much the deficiency was for which the subscribers had become liable; neither is the total amount of the subscription set out, except that it is alleged to be more than $2,500. Then it is impossible to determine from the complaint whether or not defendant was assessed for the proper amount or not. In the absence of these facts, the allegation that "an assessment was duly levied against all of the signers of said instrument, and that the amount thus assessed against said defendant was the sum of $375," is a mere conclusion of law.

Whether insolvent subscribers should be taken into consideration in making such assessment is a question not raised or considered.

2. While the Minneapolis Club was brought into this case in the pleadings, yet it does not appear, either by the evidence or pleadings, to cut any material figure in the case. It was sufficiently alleged and proved that Jones himself, on his own responsibility, conducted the business of holding the race meeting. Whether he conducted it in the name of the club, or in his own name, is, under the circumstances, immaterial. The order above set out describes the fund on which it is drawn as "your assessment to subscription of guaranty fund of the summer meeting of the Minneapolis Driving Club," and is signed, "R. F. Jones, Secy." The promise of defendant was not to the Driving Club, but to Jones. It does not appear that defendant ever joined in any subscription to the club. The misdescription in the order which connects the club with the subscription or promise should be rejected as surplusage, and the rest of the description is sufficient to identify the fund on which the order is drawn. Under these circumstances, the signature, "R. F. Jones, Secy.," is prima facie the individual act of Jones, by which he bound himself and not the club. Souhegan v. Boardman, 46 Minn. 293, 48 N. W. 1116.

3. Appellant's contention that the liability of the subscribers to the instrument first above set out is secondary to the liability of some one else, and that they are mere guarantors that some one else will pay, is not borne out by anything in the case. While the instrument is not very happily worded, its object seems to be to induce Jones to hold a race meeting at the time specified, and it is an agreement that, if he does hold it, the loss, if any, shall, up to certain amounts, be that of the subscribers, and not the loss of Jones; that, within these amounts, the subscribers shall themselves finally and ultimately bear the loss, and not have the right to look to Jones or any one else for reimbursement. This is not a collateral guaranty of the antecedent liability of some one else, but an original undertaking; and the subsequent carrying out of the undertaking, and the incurring of risk of loss by Jones, is sufficient consideration for it. No other need be expressed, and the contract is not within the statute of frauds.

4. It is claimed in the complaint and found by the court that defendant was assessed $375, while the order to plaintiff is only for $350. Appellant contends that under these circumstances there is a defect of parties plaintiff, and that Jones should be joined with the present plaintiff. This question was raised by demurrer to the complaint on the ground of defect of parties plaintiff, which demurrer was overruled and appellant answered, but failed to make the same objection in his answer. Whether or not he thereby waived the objection, we need not consider.

The order from Jones to plaintiff, as we construe it, purports to be for the whole assessment. It requests defendant to pay plaintiff $350, "the amount of your assessment to subscription," etc. This, in our opinion, amounts to an assertion to both plaintiff and defendant that the equitable assignment evidenced by the order is for the whole amount due. It must, on the face of this order, be presumed that plaintiff bargained for $350 as the whole amount due, and as a result of that bargain is entitled to proceed alone, without being embarrassed by having to join the assignor as a party. And, while this may not be a very binding obligation if the assignor intervenes in time, yet if the assignor permits the assignee to proceed alone, and makes no effort to assert any claim for any balance over the $350, it must be held that he has waived his claim for any such balance, and cannot hereafter harass the defendant with a second suit. Therefore, on the facts appearing, Jones is not a necessary party plaintiff.

Some errors have been assigned which have not been argued, and, with a view to another trial, we will consider some of the same.

5. The fact that plaintiff may have seen the subscription list in question before he entered his horse in the race, and relied on the same in making such entry, is wholly immaterial. He can found no estoppel on these facts.

6. It was error to refuse to permit defendant to cross-examine plaintiff's witness Jones as to the manner in which he had settled with other subscribers. The witness testified on his examination in chief that he had made the assessment of $375 on defendant's subscription, and, though the cross-examination in question might not show directly or alone that defendant was assessed for more

than his share, yet it had a tendency to show that fact, at least indirectly, and counsel was entitled to cross-examine the witness for the purpose of ascertaining all the facts which bore on the question of how the assessment was made on all the other subscribers.

This disposes of the case.

The order appealed from is reversed, and a new trial granted.