(June 19, 1912.)

## E. E. BUSTER, Appellant, v. ED. T. FLETCHER, Respondent.

[125 Pac. 226.]

APPEAL—REVIEW OF EVIDENCE ON APPEAL FROM JUDGMENT—REVIEW OF EVIDENCE ON APPEAL FROM MOTION FOR A NEW TRIAL—RULE OF PRACTICE—CONTRACT—JOINT OR SEVERAL—RESCISSION.

(Syllabus by the court.)

1. Under the provisions of sec. 4818, Rev. Codes, as amended by Sess. Laws 1911, p. 375, upon an appeal from a final judgment where the appellant furnishes this court with a copy of the notice of ap-

peal, of the judgment-roll, and of the reporter's transcript as prepared and settled as provided by sec. 4434, and the insufficiency of the evidence is properly presented by specification of such insufficiency, in the brief on appeal, this court has full power and authority to determine whether the evidence is sufficient to support the findings or the verdict.

2. Under the provisions of sec. 4439 and sec. 4440, as amended by Sess. Laws 1911, p. 377, the question of the insufficiency of the evidence is a ground for a new trial, and on appeal from an order on motion for a new trial such ground or the sufficiency of the evidence to justify the verdict or other decision may be reviewed.

3. Where a contract is entered into between B. as party of the first part and F. and forty-three other persons as parties of the second part, whereby the parties of the second part employ the party of the first part to construct a butter factory and feed-mill for the sum of $4,000, and in such contract each of the persons signing said contract as parties of the second part agrees to pay the sum of $100 as a part of the contract price, such contract is a joint contract in so far as employing the party of the first part to construct the butter factory and feed-mill, and is several as to the agreement to pay the contract price for such work.

4. It is a recognized rule of law that time is the essence of a contract, unless the contrary appears from the face of the contract, and in equity it may be said that time is not of the essence of a contract, and that it must affirmatively appear that the parties regarded time as an essential element in their agreement or a court of equity will not so regard it. The above rule that time is the essence of a contract applies to building contracts in which a definite time for completing the work is stipulated for, such as building contracts and the construction of railroads and bridges.

5. Where a contract is entered into between B. as party of the first part and F. and others as parties of the second part for the construction of a butter factory and feed-mill, and such contract further provides that an executive committee of three shall be appointed by the parties of the second part "with full power and authority in a majority to represent them in all their interests herein, and from time to time inspect the work of the first party while he is building said factory and placing said machinery," and the contract further provides substantially that in the event that B. should be delayed in the execution of his contract by reason of strikes, storms, unavoidable accidents or other causes over which he had no control, the time limit for the completion of said factory would be extended for a period of time equal to such delay, and the executive committee notify B. that the weather is such that the construction of the building cannot be commenced, and that B. should not com-

mence the same until a certain time in the future when the weather will permit and upon notification from such committee, and such committee notifies B. when to commence and B. proceeds in accordance with such notice and completes said building, such action of the committee is sufficient to excuse B. from commencing and completing said building within the time fixed in said contract.

6. Where a contract of employment is made jointly by forty-six persons, a majority of' such persons have no authority to rescind such contract where there is a protest on the part of the remainder of such persons, and thus avoid liability arising out of such contract by reason of the agreement of the entire number.

APPEAL from the District Court of the Seventh Judicial District for Washington County. Hon. Ed. L. Bryan, Judge.

An action to recover a debt upon a written contract of employment to construct a building. *Reversed.*

Ed. R. Coulter, and C. H. Brittenham, for Appellant.

If time is to be of the essence of the contract, it must appear that the parties made it essential to the contract or it will not be so regarded. (*Secomb v. Steele,* 61 U. S. 94, 15 L. ed. 833; *Ahl v. Johnson,* 61 U. S. 511, 15 L. ed. 1005; *Close v. Clarke,* 30 N. Y. St. Rep. 671, 9 N. Y. Supp. 538.)

The subscribers could only object through their executive committee, or, at most, when all of the parties to the joint contract joined in a rescission. (*Stinson v. Dausman,* 61 U. S. 461, 15 L. ed. 966; *Brashier v. Gratz,* 19 U. S. 528, 5 L. ed. 322.)

Twenty-five of the forty-seven signers of this joint contract did not have a right to rescind the contract. (*Gibbons v. Bente,* 51 Minn. 499, 53 N. W. 756, 22 L. R. A. 80; *Laramee v. Tanner,* 69 Minn. 156, 71 N. W. 1028; *Davis v. Ravenna Creamery Co.,* 48 Neb. 471, 67 N. W. 436; *Davis v. Hendrix,* 59 Mo. App. 444; *McArthur v. Board,* 119 Iowa, 562, 93 N. W. 580.)

There being no rescission, and subscribers having allowed the appellant to go ahead and construct the building, they are bound and must pay. (*Sinclair v. Tallmadge,* 35 Barb. (N. Y.) 602; *Nibbe v. Brauhn,* 24 Ill. 268; *Foster v. Worth-*

*ington,* 58 Vt. 65, 4 Atl. 565; *Philips & C. Con. Co. v. Seymour,* 91 U. S. 646, 23 L. ed. 341.)

Frank Harris, for Respondent.

Since no motion was ever made for a new trial, this appeal is simply from the judgment, and this court should not review the evidence. "The findings of the court are conclusive of the facts." (*Washington & R. R. Co. v. Osborne,* 2 Ida. 559, (527), 21 Pac. 421; *Purdy v. Steel,* 1 Ida. 216; *Gamble v. Dunwell,* 1 Ida. 268.)

The rule laid down in *Gibbons v. Bente* is not attempted by the court to be founded on either principle or precedent and is contrary to the doctrine laid down in the well-considered case of *Davis v. Bronson,* 2 N. D. 300, 33 Am. St. 783, 50 N. W. 836, 16 L. R. A. 655.

STEWART, C. J.—Upon the 13th day of December, 1909, the plaintiff entered into a contract with the defendant and forty-three other persons, and under the terms of such contract the plaintiff agreed to build and construct and equip a butter factory and feed-mill for the sum of $4,000, and said defendant, together with each of the other persons who signed the contract with him promised and agreed to pay the plaintiff the sum of $100 upon the completion of said butter factory and feed-mill, according to the terms of the contract. The contract provided, among other things, as follows: "Second parties agree to appoint an executive committee of three when this contract is closed, with full power and authority in a majority, to represent them and all their interests herein, and from time to time inspect the work of the first party while he is building said factory and placing said machinery. . . . . Said factory shall be completed by first party within ninety days, or thereabouts, after same is located as above provided. And payment for the same shall be due from date of completion, and shall draw 10% interest from that date; but if time is required by any of the subscribers hereto, first party agrees to accept one-half of their subscriptions in cash and allow three months' time on the balance if a good note is given

drawing 10% interest. In case first party shall be delayed in the execution of this contract by strikes, storms, unavoidable accidents or other causes over which he has no control, then the time limit for the completion of said factory shall be extended for a period of time equal to such delay.''

This action is founded upon said contract, and it is alleged in the complaint that on December 13th, after the execution of the contract there was a meeting of the subscribers to the stock of the creamery held for the purpose of choosing an executive committee as provided in the contract; that Levi Keithley, E. B. Sherman and William Towell were duly elected the executive committee; and on the 15th day of December, the subscribers, including the defendant, acting through the executive committee, entered into a contract with the plaintiff and selected a site, and that a supplementary contract was entered into whereby the plaintiff was authorized to build an ice-house on the site according to dimensions and specifications set forth in the contract. It is also alleged in the complaint that within a few days after the execution of the contract severe storms occurred at Midvale, Idaho, and that the thermometer dropped to the point below freezing and there continued thereafter, for a period of four months, intense cold weather and storms of such character that it was impossible for the plaintiff to construct said buildings as required by the plans and specifications, and on account of unavoidable accidents and other causes over which the plaintiff had no control the work was delayed for a period of four months before it was possible for him to commence the construction of said buildings, and that as soon as the weather and other conditions permitted he began the construction of the building, well, ice-house and things called for in the contract and supplementary contract, built the creamery and installed equipment and stored ice, and finally completed the same and had the same ready for acceptance on or about the —— day of ————, 1910; that within ninety days after the time when it was possible to commence work the plaintiff completed the same in all respects in conformity with the plans and specifications thereof, but that the subscribers and

the defendant and the executive committee refused to accept and still refuse to accept the same, and that the plant and machinery have been idle ever since.

The defendant filed an answer and admitted the contract as alleged in the complaint, but denies that within ninety days after the execution of the contract severe storms occurred at Midvale, but does admit that the thermometer dropped to a point below zero, but denies that thereafter for four months cold weather or storms continued of such a character that it was impossible for the plaintiff to construct the building, or that it was impossible to procure help during that period, and denies that the plaintiff began the construction of said building as soon as the weather conditions permitted, or that he built the same and completed the same for acceptance of the defendant and the other subscribers or the executive committee on the —— day of ————, 1910, or that he began the construction except a small ice-house at any time prior to the 7th day of April, 1910, and denies that the contract was completed and the work constructed and equipped in accordance with the agreement. Defendant denies that the plaintiff, within ninety days after the time when it was possible to commence the building, completed it in conformity with the plans and specifications.

An affirmative defense is alleged by the defendant, that the contract set forth in the complaint was entered into as alleged in the complaint, and it is alleged that time is and was an essential element in the contract, and that it was necessary to have the creamery completed and equipped so that contracts could be made with farmers and stockmen having milk for market, and that milk could be turned over to said creamery; and that after the execution of the contract the plaintiff failed and neglected and refused to begin the work or to procure material therefor until after the 7th day of April, 1910, notwithstanding it could have been done and completed according to the contract; and that as soon as the full time for the completion and equipment of the creamery had expired according to the terms and conditions of the contract that the defendant and a large number of the subscribers

elected and did rescind said contract, and have refused to accept the creamery.

Upon the issues thus presented the findings were made by the trial court and upon the findings and conclusions of law the court rendered.a judgment that the plaintiff take nothing by his action, and that the same be dismissed and the defendant have costs. This appeal is from the judgment.

Counsel for respondent contends that this appeal having been taken from the judgment, this court cannot review the evidence. The record in this case contains the evidence taken at the trial, certified to by the stenographer and settled and allowed by the trial judge.

The notice of appeal in this case was served and filed on the 11th day of August, 1911, and was taken under the provisions of sec. 4807, as amended by an act approved February 20, 1911, Sess. Laws 1911, p. 367, and the transcript and record filed was prepared in accordance with the provisions of secs. 4818 and 4820a, as amended by an act approved February 25, 1911, Sess. Laws 1911, p. 375, and sec. 4434, added to part 2, title 8, chap. 7 of the Code of Civil Procedure, under an act approved February 25, 1911, Sess. Laws 1911, p. 379. Sec. 4807, as amended, omits the one year allowed by the statute prior to such amendment within which to take an appeal from a judgment, and places a limit of sixty days after such judgment, within which an appeal may be taken from a final judgment in an action or special proceedings commenced in the court in which the same is rendered, and also from a judgment rendered on an appeal from an inferior court, and also from a judgment rendered on an appeal from an order, decision or action of a board of county commissioners.

It also appears that the provision of the statute prior to the amendment, that ''an exception to the decision or verdict on the ground that it is not supported by the evidence cannot be reviewed on an appeal from the judgment unless the appeal is taken within sixty days after the rendition of the judgment,'' is omitted, and in lieu thereof the amendment limits the different appeals authorized under this paragraph to

sixty days, and no limitation is prescribed as to the questions which the court may review when the appeal is taken within sixty days.

The record required to be submitted to this court on appeal from a final judgment is prescribed by sec. 4818, as amended by the act of February 25, 1911, Sess. Laws 1911, p. 375, as follows: "On an appeal from a final judgment the appellant must furnish the court with copy of the notice of appeal, of the judgment-roll or any bill of exceptions *or reporter's transcript prepared and settled as prescribed in section 4434* upon which the appellant relies." And sec. 4434, as amended, provides: "Any party desiring to procure a review on appeal to the supreme court of any ruling of the district court made during the trial, or the sufficiency of evidence to sustain the verdict or decision, in an action or special proceeding, may, in lieu of preparing, serving, and procuring the settlement of a bill of exceptions as in this chapter provided, procure a transcript of the testimony and proceedings, including the instructions given or refused, and exceptions thereto, on the trial, or such part thereof as may be necessary, in the following manner." Then follows the method prescribed in procuring the reporter's transcript of the testimony and its settlement by the trial judge, and this transcript is the one referred to in sec. 4818 as reporter's transcript prepared and settled, and is required to be presented to this court on appeal from the judgment. Such transcript may be used either on an appeal from the final judgment, as provided by sec. 4818, or on an appeal from an order denying a new trial; and if used on appeal from a final judgment, such transcript has the force and effect of a bill of exceptions duly settled and allowed and is adequate and sufficient to present for review on such appeal any ruling appearing therein to have been excepted to, or by the statute deemed excepted to, or any question of insufficiency of evidence which may afterward be properly presented by specification of insufficiency in the brief on appeal.

We therefore conclude that on an appeal from a final judgment, if the appellant furnishes the appellate court with a

copy of the notice of the appeal, of the judgment-roll and of the reporter's transcript as prepared and settled, as provided by said sec. 4434, and the question of the insufficiency of the evidence is properly presented by specification of such insufficiency in the brief on appeal, the appellate court has full power and authority to determine whether the evidence is sufficient to support the findings or the verdict.

It follows that it is not absolutely necessary for the appellant to move for a new trial in order to have determined the sufficiency of the evidence to sustain the findings or the verdict.

These various provisions thus referred to in no way interfere with the procedure with reference to a motion for a new trial, and by the provisions of the act approved February 25, 1911, sec. 4440 is amended to provide: "When an application is made for a cause mentioned in the first, second, third, and fourth subdivisions of the last section it must be made upon affidavits; for any other cause it may be made, at the option of the moving party, either upon the records and files in the action, or the minutes of the court."

This chapter 118, which includes the above section and other sections, in no way alters or amends sec. 4439, Rev. Codes, which in subd. 6 provides that "insufficiency of the evidence to justify the verdict or other decision, or that it is against law"; this ground for a new trial still remains, and sec. 4807 provides that an appeal may be taken from an order granting or refusing a new trial.

It will be observed by the provisions of sec. 4818, that on appeal from a final judgment the appellant must furnish the court with copy of the notice of appeal, of the judgment-roll and of any bill of exceptions or reporter's transcript prepared and settled as prescribed in sec. 4434, upon which the appellant relies. Sec. 4434, as quoted above, shows that this record includes the evidence settled and allowed by the trial court, and also the instructions of the court, and upon this record this court is required to review any ruling of the district court made during the trial, and the sufficiency of the evidence to sustain the verdict or decision. This provision

necessarily means that on an appeal taken from a judgment every question either of law or fact, which arises up to and including the judgment, may be reviewed upon appeal when presented in the manner prescribed by these various provisions of the statute, and it no doubt was the intention of the legislature in enacting these various amendments and additions to the Code of Civil Procedure in relation to appeal, to provide a plain and speedy method of appealing from a final judgment, whether upon a verdict of the jury or the decision of the trial court, and the provisions are so comprehensive in their general character as to provide for reviewing upon an appeal from a judgment every question occurring upon the pleadings and during the trial up to and including the entry of the judgment, as completely as the same may be reviewed upon motion for a new trial. Questions affecting the rights of the parties to the suit arising after the entry of judgment, and which may be urged as grounds for a new trial, can only be reviewed upon appeal from an order made upon motion for a new trial, setting forth such alleged errors, under the provisions of the act of February 25, 1911 (Sess. Laws 1911, p. 377), amending sec. 4440 and subsequent sections of the Rev. Codes.

The word "decision" used in sec. 4434, to sustain which the evidence may be reviewed on appeal, evidently was intended by the legislature to mean, where a cause is tried to the court and findings of fact and conclusions of law are made by the trial court, and the decision necessarily includes the trial court's findings of fact and conclusions of law. In other words, the decision of the court and the verdict of the jury are synonymous; the one is the result of the decision of the jury, and the other, the trial judge. The judgment, however, upon either the verdict or the decision necessarily follows such decision. The judgment is entered by the clerk, as provided by the statute, secs. 4407, 4450 and 4454, Rev. Codes. The appeal, therefore, in this case having been taken from the final judgment within the sixty days after the entry of such judgment, the evidence having been presented to this court in connection with the judgment-roll as prescribed by the

statute, such evidence may be reviewed for the purpose of determining the sufficiency of the evidence to justify the decision of the trial court and whether the decision is against the law.

It is suggested, however, that if a person desiring to appeal on the ground of the insufficiency of the evidence to support the verdict or findings is not required to move for a new trial, it will result in many more appeals being taken than if the motion for a new trial is required, because in many cases the trial court might grant a new trial. We do not believe there is anything in this contention for the reason that under the provisions of sec. 4807, Rev. Codes, before amendment, the question of the insufficiency of the evidence could be presented on appeal from the judgment, providing the appeal was taken within sixty days after the entry of judgment, and the result above referred to did not occur under such provision. (*Holt v. Spokane & Palouse R. Co.*, 3 Ida. 703, 35 Pac. 39; *Brady v. Linehan*, 5 Ida. 732, 51 Pac. 761; *Mahoney v. Board of County Commissioners*, 8 Ida. 375, 69 Pac. 108; *Cunningham v. Stoner*, 10 Ida. 549, 79 Pac. 228; *Walker v. Elmore County*, 16 Ida. 697, 102 Pac. 389.)

We believe, also, there is a very cogent reason why attorneys will interpose a motion for a new trial whenever there is a substantial conflict in the evidence, and because of that there will be fewer appeals from the judgment. The reason is: Where there is a substantial conflict in the evidence the trial court has the authority to set aside the verdict if such court concludes that substantial justice has not been done, whereas this court is prohibited from setting aside a verdict whenever there is substantial evidence to support the verdict. (Rev. Codes, sec. 4824.) A careful attorney, therefore, will interpose a motion for a new trial whenever there is substantial evidence to support the verdict, and in such case the trial court ought to grant a new trial whenever such court thinks substantial justice has not been done by the verdict, and not pass the case up to this court for final determination. Under the provision of sec. 4824 of the Rev. Codes, this court is powerless to set aside a verdict where there is substantial evidence to support it. From many records presented to this

court upon appeals from motions for a new trial there appears a proneness on the part of the trial court not to pass upon the case, even though it appears to the trial court that substantial justice has not been done, and to pass the case up to this court for decision, and to overlook the fact that this court can give no relief where there is substantial evidence to support the verdict.

Where there is direct conflict in the evidence the trial court ought always to grant a new trial, if it is clearly of the opinion that substantial justice has not been reached by the verdict of the jury, and not shirk the responsibility imposed by the statute to grant a new trial, where there is a conflict in the evidence, although that court is of the opinion that substantial justice has not been done, and not pass the matter up to this court where no relief can be given in such a case.

The controlling question urged upon this appeal is that the evidence does not support the findings and judgment. The court finds, first, that the contract alleged in the complaint was executed, on the 13th day of December, 1909, by the defendant and other parties as alleged in the complaint; that the plaintiff agreed to build and equip a butter factory and feed-mill for the sum of $4,000, the same to be constructed within ninety days or thereabouts after the site for the same was selected. The court also finds that by the contract the defendant agreed to pay the plaintiff the sum of $100 upon the completion of the butter factory and feed-mill in accordance with the contract. The court finds that on December 14, 1909, after the execution of the contract, there was a meeting of the subscribers to the stock of said creamery, and that Levi Keithley, E. E. Sherman and Willis Towell were elected as the executive committee as provided in the contract; that on the 15th day of December, 1909, the subscribers to the contract, including the defendant, acting through the executive committee, selected a site for the location of said building. The court found that the contract provided ''that in the event the plaintiff should be delayed in the execution of his contract by reason of strikes, storms, unavoidable accidents or other causes over which he had no control, the time limit for

the completion of said factory would be extended for a period of time equal to such delays.'' The court finds that the plaintiff was not delayed in the execution of said contract by strikes, storms, unavoidable accidents or other causes over which he had no control at any time beyond the time mentioned in the contract, to wit, ninety days, and that the plaintiff did not begin the construction of the building mentioned in the contract as soon as the weather conditions would permit, and did not begin the erection of the building until after the 7th day of April, 1910; that before the plaintiff began the erection of the factory on the 7th day of April, 1910, the defendant and twenty-four others of the subscribers to the contract notified the plaintiff in writing that they and each of them elected to and did rescind said contract and did withdraw therefrom; that after the receipt of said notice the plaintiff proceeded to construct the building and completed the same on or about the 13th day of June, 1910, and tendered the same to the defendant for his acceptance; that the defendant refused and has refused to accept the same.

Upon these findings of fact the court concluded that the plaintiff, in not completing and equipping the butter factory on or about the 15th day of March, 1910, violated his contract and thereafter the defendant had a lawful right to rescind the same on his part, and that on the 7th day of April, 1910, the defendant did rescind the contract on his part, and that he had a good and lawful right to rescind the same, and that the defendant is not liable on his contract, and that the action should be dismissed.

We think it must be conceded that the evidence conclusively proves that the contract sued upon in this action was made between the plaintiff and the defendant and forty-three other persons, and that the defendant and the other persons signing such contract employed the plaintiff to construct a butter factory and feed-mill for the sum of $4,000, and that each person signing such contract agreed to pay the sum of $100 as a part of the contract price, and that, as provided in the contract, Levi Keithley, E. B. Sherman and William Towell were elected as an executive committee. The provision in the con-

tract providing for an executive committee is as follows:
"Second parties agree to appoint an executive committee of
three when this contract is closed, with full power and au-
thority in a majority, to represent them in all their interests
herein, and from time to time inspect the work of the first
party while he is building said factory and placing said ma-
chinery." There can be no question but that this language
means that an executive committee should be appointed by the
subscribers, and that such committee should have full power
and authority in a majority of such committee in all matters
in connection with the construction of the building, and the
carrying out of the contract after the contract was made.
This provision, no doubt, was inserted in the contract by
reason of the fact that a large number of persons had signed
the contract, and that it might be a difficult and inconvenient
matter to secure the assent of all the defendants as to the
matters connected with the construction of the building, and
the possible disagreement among them as to such matters, and
therefore such power was vested entirely in an executive com-
mittee of three. The contract provides: "Said factory shall
be completed by first party within ninety days, or thereabouts,
after the same is located as above provided."

It will be observed that the time for the completion of the
building was about ninety days. The contract also provides
that "in case first party shall be delayed in the execution of
this contract by strikes, storms, unavoidable accidents or other
causes over which he has no control, then the time limit for
the completion of said factory shall be extended for a period
of time equal to such delays." It is recognized that at law
the general rule is, time is of the essence of the contract, unless
a contrary intent appears from the face of the contract, and
in equity the general rule may be said to be that time is not
of the essence of the contract, and that it must affirmatively
appear that the parties regarded time or place as an essential
element in their agreement, or the court of equity will not so
regard it. The rule announced above, that time is the essence
of contracts at law, applies to building contracts in which a
definite time for completing the work is stipulated for, such as

building contracts, the construction of railroads and bridges, etc. (Page on Contracts, vol. 2, secs. 1160, 1161.) It will thus be seen that time was not of the essence of the contract, and that the time fixed in the contract for the completion of the building was conditional, first, that the executive committee had full power and authority to extend the time of completion to a time different from ninety days; second, in case the party of the first part was delayed in the execution of the contract by strikes, storms, unavoidable accidents or other causes over which he had no control, then the time limit for the completion of the factory should be extended for a period of time equal to such delay. The evidence is clear that the executive committee accepted the appointment as such and entered upon the discharge of the duties imposed upon them and continued in such capacity until the contract was completed, and made changes with reference to the construction of the buildings under subsequent contracts. Under the authority thus given it is apparent that this executive committee had full power to determine whether weather conditions were such as would prevent the appellant from proceeding with his work, and whether proceeding with the work would be improper by reason of such weather conditions.

There is no conflict in the testimony as to this committee being appointed. It seems from the language used in the contract that there can be no question about the authority of the committee to act. There is no conflict in the evidence but that Sherman and Keithley, a majority of the executive committee, had a conversation and made an agreement with the appellant, in January, 1911, whereby it was agreed that the weather conditions were such that it was not advisable at that time to commence the construction of said creamery, and that these conditions continued during January, February and March, and that this committee agreed with the appellant that they would notify him when the weather conditions became such that the appellant could safely go ahead with the contract; that in March, along about the middle of the month, the two members of the executive committee in conversation with each other discussed when they would have the work re-

sumed, one believing that the work should commence April 1st, and the other April 15th, and that a letter was written to the appellant notifying him to commence the work in the first part of April, and that they so notified the appellant, and that the appellant then commenced the construction work and furnished the same about the 13th day of June, 1911. So it is plain from the evidence that the executive committee gave consent that the work should not be commenced or continued until the committee notified the appellant, and that this did not take place until a short time before the appellant commenced the work, and that on the appellant's receiving notice from the committee he commenced the work and completed it within a reasonable time.

The court, therefore, erred in findings of fact 8th and 9th. Counsel, however, contend that even admitting that the executive committee did consent to an extension, yet before the appellant commenced the constructive work the respondent and twenty-four others of the subscribers rescinded the contract for the construction of said building for the reason that the time limit had expired, and served written notice upon the appellant that the signers to the notice elected to rescind the contract for the reason that the time limit fixed by the contract had expired. This notice was served on the 6th day of April, 1911. This contention, however, cannot prevail under the terms and provisions of the contract involved in this case, for the reason that the joint action of twenty-five of the signers to the contract had no power to rescind the contract. It is apparent from the contract itself that the obligation of the defendant and the other signers to the contract is a joint obligation on the part of all the signers, and that such signers employed the appellant to construct such building, and the agreement to employ is a joint contract and not a several contract. The contract, however, to pay for the building is a separate obligation of each signer, that such signer will pay only $100 of the sum agreed to be paid for such construction work. So, under the contract, the employment of the appellant and the rescission of the contract being joint by the defendant and the other signers, such contract cannot be can-

celed or rescinded by the action of a majority or any number of such signers.

In the case of *Gibbons v. Bente*, 51 Minn. 499, 53 N. W. 756, 22 L. R. A. 80, the supreme court of Minnesota had under consideration a contract very similar to the one involved in this case, and the supreme court, after discussing whether an obligation of the parties was joint or several, said: ''Nor can we gather from any part of the contract that there was any intent, except in the matter of payment, to make the obligation a several one. Certainly the subscribers did not so understand it, for the repudiation and renouncement relied upon by defendant were by means of a motion made and carried at a meeting held by them, a majority of all being present, but less than a majority of all voting in favor of the motion.

''We are therefore of the opinion that, while the obligation to pay was several and independent, the subscribers jointly shared the burden, and were united in interest in all other respects. Taken as a whole, the instrument was of a very peculiar character, and evidently, until a stock company was formed, . . . . it was not intended that even a majority should govern or control. It follows that unanimous consent would have to be secured before the contract could be repudiated and renounced.''

Applying this rule to the contract now under consideration, it is apparent that the several subscribers to the stock who agreed to pay $100 for each share, jointly engaged in an agreement to employ the appellant to construct the improvement for which such sums should be paid, and that they were all interested in the general project as a common body, and that the obligation entered into in employing the appellant was a joint obligation and that they were to share in the ownership of the property, in the proportion that the share owned by each bore to the entire capital for which the corporation was to be formed. (*White v. Scott*, 26 Kan. 476.)

Referring now to the contract, we find that it provides: ''We the subscribers hereto, desiring a butter factory and feed-mill of the following description, located at or near the town of Midvale, County of Washington, State of Idaho,

hereby enter into this agreement with E. E. Buster of Boise, Idaho, as first party, the subscribers hereto being second parties, for the construction and equipment of a butter factory and feed-mill to be built and equipped according to the descriptions indorsed hereon, on the following terms and conditions for the sum of Four Thousand Dollars.

"This contract is not binding unless the amount of $4,000 or more shall be subscribed, and it is understood and agreed that no subscriber is to be liable for a greater interest in said factory when the same is completed than is represented by the amount of his or her individual subscription. Each subscriber hereto hereby agrees to pay the amount paid by him or her to first party, his heirs or assigns, when the factory is completed and no more." This factory having been completed, and more than the $4,000 having been subscribed, makes the obligation of the signers a joint contract in the employment of the plaintiff, and a several contract with reference to the payment to be made by each signer. (*Laramee v. Tanner,* 69 Minn. 156, 71 N. W. 1028; *McArthur v. Board,* 119 Iowa, 562, 93 N. W. 580; *Davis v. Hendrix,* 59 Mo. App. 444.) It clearly appears by this agreement that the several subscribers to such contract were to incorporate and become the owners of the real property and the improvements made thereunder, and that their proportion was to be as the share of each to the entire capital stock for which the corporation was to be formed.

We have then, in this case, forty-four persons, including the defendant, who contract with the plaintiff to construct the creamery, and each agreed to pay $100 personally upon the contract price. These forty-four persons elected an executive committee under the provisions of the contract and the executive committee extended the time in which the plaintiff should complete such building. Twenty-five of the signers to the contract met and attempted to rescind the contract on account of the fact that the contract was not completed within the time fixed by the contract. The contract, however, was completed within the time given by the executive committee. The twenty-five who attempted to rescind the contract refused to

pay their subscriptions. Nineteen of the subscribers paid their subscriptions. The building was completed and accepted by the executive committee, and is now held and now stands idle without occupancy with nineteen subscribers having paid and twenty-five who refuse to pay. Under the rule announced in the case of *Gibbons v. Bente* above, we do not believe that the twenty-five persons had any power or authority to rescind the contract; that the contract was joint in so far as its being a contract of employment, and that such a contract could not be rescinded without the action of all the signers to such contract, and that the court erred in its conclusion of law that the plaintiff violated his contract and that the defendant had a lawful right to rescind the same on his part, and therefore did rescind it, and that the plaintiff could not recover.

The judgment, therefore, is *reversed*, and a new trial is granted. Costs awarded to the appellant.

Ailshie and Sullivan, JJ., concur.