GEORGE BALTES, APPELLANT, V. FARMERS IRRIGATION DISTRICT ET AL., APPELLEES.

FILED JUNE 7, 1900. No. 11,385.

1. **Irrigation Districts:** BONDS. Section 2, chapter 78, Session Laws of 1899, authorizing irrigation districts, under certain circumstances, to use their bonds, instead of the proceeds thereof, in acquiring or constructing irrigation ditches or canals, is a valid enactment.

2. ————: LEGISLATURE: SALE: RATIFICATION. The legislature may ratify or validate a sale or exchange of district irrigation bonds which was not authorized at the time such sale or exchange was made; and it may provide a method of disposing of such bonds different from the one existing at the time they were voted.

3. **Election:** NOTICE: CLOSING POLLS. Where it affirmatively appears that an election was fairly conducted; that it was held on the day and within the hours fixed by law; that due notice was given and that a majority of the electors entitled to vote voted in favor of the proposition submitted, the failure to keep the polls open for the entire time required by the statute will be deemed a harmless irregularity.

4. **Officers:** CONTINUING DUTY. Where the officers of a *quasi*-public corporation are required immediately to perform a certain act for the benefit of the corporation, the duty will, ordinarily, be regarded as a continuing one.

5. **Issuing Bonds:** DUTY OF OFFICERS. A statute which directs offi-

cers of a *quasi*-public corporation to immediately issue bonds which have been voted, and which also provides that they "may sell the bonds from time to time" and "before making any sale the board shall, at a meeting, by resolution declare its intention to sell a specified amount of the bonds," imposes upon such officers a duty which continues until such provision is complied with.

Appeal from the district court of Scott's Bluff county. Heard below before Grimes, J. *Affirmed.*

*John S. Kirkpatrick,* for appellant.

*Wright & Stout* and *F. A. Wright, contra.*

Sullivan, J.

This action was instituted by George Baltes to prevent the Farmers Irrigation District from exchanging its bonds at their par value for an irrigation system partially completed, and for the labor and material necessary to carry the unfinished work to completion. The district was formed under the act of 1895, for the purpose of purchasing the partly constructed irrigation works of the Farmers Canal Company, and completing the same. The bonds in question were voted in 1897. They have been offered for sale and remain unsold for want of bidders. The principal contention of the plaintiff is that they can not be exchanged, because the law, as it stood at the time they were voted, authorized the district to dispose of them by sale, and not otherwise. Comprehension of the question thus raised, and of the other questions considered, will be aided by bringing into view the several provisions of the statute relating to the authority of irrigation districts to issue bonds.

Section 10, chapter 70, Session Laws of 1895, declares that the board of directors shall have the right "to acquire by purchase any irrigation works, ditches, canals or reservoirs already constructed or partially constructed for the use of said district. In case of purchase the bonds of the district hereinafter provided for may be used at

their par value in payment." Section 13 of the same chapter is, in part, as follows: "For the purpose of constructing necessary irrigating canals and works, and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of this act, the board of directors of any such district must, as soon after such district has been organized as may be practicable, estimate and determine the amount of money necessary to be raised, and shall immediately thereupon call a special election, at which shall be submitted to the electors of such district possessing the qualifications prescribed by this act, the question of whether or not the bonds of said district shall be issued and the amount so determined; *Provided* such bonds shall not be issued for more than the actual estimated cost of said ditches. Notice of such election must be given by posting in three public places in each election precinct in said district for at least twenty days, and also by publication of such notice in some newspaper published in the county where the office of the board of directors of such district is required to be kept, once a week for at least three successive weeks. Such notice must specify the time of holding the election, the amount of bonds proposed to be issued, and said election must be held, and the result thereof determined and declared in all respects as nearly as practicable in conformity with the provisions of this act governing the election of officers; *Provided*, that no informalities in conducting such an election shall invalidate the same if the election shall have been otherwise fairly conducted. At such an election the ballots shall contain the words 'Bonds—Yes,' or 'Bonds—No,' or words equivalent thereto. If a majority of the votes cast are 'Bonds—Yes,' the board of directors shall immediately cause bonds in said amount to be issued." Section 14 is as follows: "The board may sell said bonds from time to time in such quantities as may be necessary and most advantageous to raise the money for the construction of said canals and works, the acquisition of said property

and rights, and otherwise to fully carry out the object and purposes of this act. Before making any sale the board shall at a meeting, by resolution declare its intention to sell a specified amount of the bonds and the day and hour and place of such sale, and shall cause such resolution to be entered in the minutes, and notice of the sale to be given by publication thereof at least twenty days in a daily newspaper published in each of the cities of Omaha and Lincoln and in any other newspaper, at their discretion. The notice shall state that sealed proposals will be received by the board at their office, for the purchase of the bonds till the day and hour named in the resolution. At the time appointed the board shall open the proposals and award the purchase of the bonds to the highest responsible bidder and may reject all bids; but said board shall, in no event, sell any of said bonds for less than ninety-five per cent of the face value thereof." Section 24 originally declared: "The cost and expense of purchasing and acquiring property and constructing the works and improvements herein provided for shall be wholly paid out of the construction fund." In 1899 this section, so far as it is material to the present inquiry, was amended so as to read: "The cost and expense of purchasing and acquiring property and constructing the works and improvements herein provided for shall be wholly paid out of the construction fund, or in the bonds of said district at their par value, after having first advertised the same for sale as in this act provided and having received no bids therefor of ninety-five per cent or upwards of their face value." Session Laws, 1899, ch. 78, sec. 2.

It will be readily noticed, in comparing the old section with the new, that the only effect of the amendatory act is to authorize irrigation districts, under certain circumstances, to use the bonds, instead of the proceeds thereof, in acquiring or constructing irrigation ditches or canals. We do not see why this legislation is not entirely valid. When the bonds were voted, the defendant district had

power to dispose of them by sale, or by exchanging them for irrigation works wholly or partially constructed. Afterwards the legislature added authority to exchange the bonds for the labor and materials necessary to carry on the work of construction. The legislature might have authorized the district to issue bonds and sell or exchange them without a vote of the electors; and it might, undoubtedly, ratify and validate a sale or exchange which was not authorized at the time it was made. The adjudged cases upon this point are numerous and harmonious. *Belo v. Forsythe County*, 76 N. Car., 489; *State v. Mayor of Charleston*, 10 Rich. Law [S. Car.], 491; *Knapp v. Grant*, 27 Wis., 147; *Atchison v. Butcher*, 3 Kan., 104; *Thompson v. Perrine*, 103 U. S., 806; *Utter v. Franklin*, 172 U. S., 416. We do not doubt the authority of the legislature to confer new powers upon irrigation districts at any time, or to restrict or abrogate altogether some of the powers previously granted. The fundamental misconception underlying the plaintiff's argument is that the district electors are the source of power. The truth, of course, is that the legislature is the fountain of authority; and the district, in its corporate capacity, may do, not what the electors permit, but what the law sanctions.

Another ground upon which it is claimed the defendants should be enjoined from issuing the bonds is that the election was irregularly conducted, and the notice thereof insufficient. Section 13 of the act discloses that the notice must specify the time of holding the election and the amount of bonds proposed to be issued. The notice here assailed did this, and also embraced the proposition upon which the vote would be taken. It satisfied completely the requirements of the law. The polling places, according to the election notice, were to be kept open from 2 o'clock P. M. to 6 o'clock P. M. It is contended that they should have been open from 8 o'clock in the morning to 6 o'clock in the evening. Admitting for the purposes of this case that plaintiff's view of the statute is correct, we are, nevertheless, constrained

to hold that the alleged irregularity did not vitiate the election. In section 13 aforesaid it is *"Provided,* that no informalities in conducting such election shall invalidate the same if the election shall have been otherwise fairly conducted." It appears affirmatively from the record before us that the election in question was fairly conducted; and that a majority of the electors not only voted, but voted in favor of the proposition to issue bonds. This being so, the result was unaffected by the failure of the election officers to open the polls at 8 o'clock in the morning. "It is," says Judge Dillon, "a canon of election law that an election is not to be set aside for a mere informality or irregularity which can not be said in any manner to have affected the result of the election." Dillon, Municipal Corporation, par. 197, note. In *Piatt* v. *People,* 29 Ill., 54, 72, Mr. Justice Breese thus clearly states the principle which should govern courts in passing upon the validity of elections claimed to have been irregularly conducted: "The rules prescribed by the law for conducting an election are designed chiefly to afford an opportunity for the free and fair exercise of the elective franchise, to prevent illegal votes, and to ascertain with certainty the result. Such rules are directory, merely—not jurisdictional or imperative. If an irregularity, of which complaint is made, is shown to have deprived no legal voter of his right, or admitted a disqualified person to vote—if it casts no uncertainty on the result, and has not been occasioned by the agency of a party seeking to derive a benefit from it—it may well be overlooked in a case of this kind, when the only question is, which vote was the greatest." The forms which must be observed in order to render the election valid are those which affect the merits. Other cases recognizing the doctrine just stated are *De Berry* v. *Nicholson,* 102 N. Car., 465; *Seymour* v. *City of Tacoma,* 6 Wash., 427; *Cleland* v. *Porter,* 74 Ill., 76; *Fry* v. *Booth,* 19 Ohio St., 25.

A further and final objection to the issuance of the bonds is that the authority of the district board in the

premises has been extinguished by the efflux of time. This contention is based on the language of section 13 of the act of 1895, which declares that, if the proposition to issue bonds be adopted, "the board of directors shall immediately cause bonds in said amount to be issued." This provision of the statute imposed upon the officers of the district a duty to be performed for the benefit of the district. Such duty should, if possible, have been performed at once; but failure to act promptly did not release the officers from their obligation, nor nullify the action of the electors, which was in the nature of a command to their servants. The duty was a continuing one, and its performance might be coerced whenever the bonds could be disposed of in the manner prescribed by the statute. This is apparent from the provisions of section 14, which authorizes the board to "sell said bonds from time to time in such quantities as may be necessary and most advantageous to raise the money for the construction of said canals," etc., and this provision is emphasized by the further statement that "Before making any sale the board shall, at a meeting, by resolution declare its intention to sell a specified amount of the bonds and the day and hour and place of such sale."

The judgment of the district court denying plaintiff's application for an injunction is

AFFIRMED.