(May 14, 1921.)

## M. TURNER, Respondent, v. ROSEBERRY IRRIGATION DISTRICT, a Municipal Corporation, and W. H. H. MEADOR, CHARLES McDONALD and WILLIAM BARKER, Constituting the Board of Directors Thereof, and W. H. H. MEADOR, as Secretary, and WILLIAM BARKER, as President Thereof, Appellants.

[198 Pac. 465.]

MUNICIPAL CORPORATION — IRRIGATION DISTRICT — BONDS — POWER TO ISSUE—CONDITIONS—BOARD OF DIRECTORS—POWERS OF WITH RESPECT TO BONDS — AUTHORITY NOT LOST BY LAPSE OF TIME — STATUTORY DATE OF BONDS—MATURITY—ISSUE—RESOLUTION BY BOARD OFFERING ISSUE FOR SALE—OFFICERS AUTHORIZED TO SIGN BONDS.

1. The power of municipal corporations to issue bonds depends upon a grant of authority from the legislature. While a municipality has discretion to issue such bonds as will best accomplish the general object to secure which their issue was authorized, yet the legislature in granting authority therefor may impose such conditions as it may choose, and unless the conditions are complied with, the issue is unauthorized and the bonds are invalid.

2. Under the provisions of C. S., sec. 4367, the board of directors of an irrigation district may in their discretion offer for sale and sell duly authorized bonds of the district from time to time, in such quantities as may seem under existing circumstances to be desirable. Delay of the board in acting does not nullify the action of the electors in authorizing a bond issue. Such delay does not operate to relieve the board of their duty nor deprive them of their authority to issue bonds which have been duly authorized, provided they have not previously withdrawn the bonds from issue in accordance with the statute, and no showing is made of a change of circumstances which would render it impossible to carry out the purpose for which the bonds were authorized.

3. Under the provisions of C. S., sec. 4360, all bonds of a series authorized by vote of the electors of an irrigation district, regardless of when they may be issued, must bear the date of Janu-

ary 1st, or July 1st next following the date of their authorization.

4. An irrigation district is without authority to issue bonds maturing less than 11 or more than 20 years from the date of issue thereof.

5. Under the provisions of C. S., sec. 4360, an issue of bonds of an irrigation district is all or some part of a series offered for sale at any one time by the board of directors, and such bonds begin to mature from the date of the resolution by the board of directors offering the issue for sale.

6. Bonds of an irrigation district may be signed by the officers of the district in office at the time of their issuance and delivery.

APPEAL from the District Court of the Third Judicial District, for Valley County. Hon. Chas. P. McCarthy, Judge.

Action to restrain the issuance of irrigation district bonds. Judgment for plaintiff, *modified and affirmed.*

D. M. Cox, for Appellants.

The power of an irrigation district to dispose of bonds authorized at an election held June 6, 1910, is not lost by failure to exercise it until 1920. (Secs. 4367, 4359, C. S.; *Baltes v. Farmers' Irr. Dist.,* 60 Neb. 310, 83 N. W. 83.)

The statute provides a uniform date of issue for all bonds of a series, which date is the January 1st or July 1st next following the election at which the bonds are authorized. From this date interest begins to run and maturity is determined. (*Emmett Irr. Dist. v. Thompson,* 253 Fed. 316, 165 C. C. A. 98.)

"Issue" in sec. 4360, C. S., does not refer to date of "sale" or "delivery," but, as in financial parlance, refers to the arbitrary date fixed as the beginning of the term for which the bonds are to run. (*O'Neill v. Yellowstone Irr. Dist.,* 44 Mont. 492, 121 Pac. 283; *Board of Directors v. Mineah* (Wash.), 192 Pac. 997.)

Irrigation district bonds may be executed at any time after authorization and before delivery by the persons hold-

ing the office of president and secretary at the date of execution, and delivery thereafter estops the district to question the validity of execution. (Secs. 4360, 4330, 4331, 4343, C. S.; *Emmett Irr. Dist. v. Thompson, supra; Yesler v. City of Seattle,* 1 Wash. 308, 25 Pac. 1014; *O'Neill v. Yellowstone Irr. Dist., supra.*)

Power to issue irrigation district bonds is wholly statutory, and the validity of such bonds even in the hands of innocent purchasers depends upon strict compliance with the statute. (*People's Bank v. School Dist. No. 52,* 3 N. D. 496, 57 N. W. 787, 28 L. R. A. 642; *Anthony v. Jasper County,* 101 U. S. 693, 26 L. ed. 1005, see, also, Rose's U. S. Notes.)

Hawley & Hawley and Sam S. Griffin, for Respondent.

The authority to dispose of irrigation district bonds is lost by failure to exercise such authority within a reasonable time after the election granting it. (Sec. 4367, C. S.)

Each issue of a series of irrigation district bonds should bear a different date, i. e., the January 1st or July 1st next following the date of adoption of a resolution of the board of directors, providing for the disposal of the issue. (Secs. 4360, 4367, C. S.; Sess. Laws 1903, pp. 165, 166; Sess. Laws 1907, pp. 495, 496.)

Irrigation district bonds running either a less or greater term than the statute provides are void, even in the hands of *bona fide* holders. (19 R. C. L., "Municipal Corp.," 994; *Norton v. Town of Dyersburg,* 127 U. S. 160, 8 Sup. Ct. 1111, 32 L. ed. 85; *Barnum v. Town of Okolona,* 148 U. S. 393, 13 Sup. Ct. 638, 37 L. ed. 495, see, also, Rose's U. S. Notes; *Woodruff v. Okolona,* 57 Miss. 806; *People's Bank v. School Dist. No. 52,* 3 N. D. 496, 57 N. W. 787, 28 L. R. A. 642; *Anthony v. Jasper County,* 101 U. S. 693, 25 L. ed. 1005, see, also, Rose's U. S. Notes; *State v. Moore,* 46 Neb. 590, 50 Am. St. 626, 65 N. W. 193; *Board of Commrs. v. Vandriss,* 115 Fed. 866, 53 C. C. A. 192; *City of South St. Paul v. Lamprecht Bros. Co.,* 88 Fed.

449, 31 C. C. A. 585; *Dows v. Town of Elmwood,* 34 Fed. 114; *Rock Creek Twp. v. Strong,* 96 U. S. 271, 24 L. ed. 815, see, also, Rose's U. S. Notes; *Syracuse Twp. v. Rollins,* 104 Fed. 958, 44 C. C. A. 277.)

Interest begins to run from, and maturities of bonds are determinable by, the date actually sold and delivered. "Issue" in sec. 4360, C. S., refers to such date. (Secs. 4360, 4371, 4387, 4388, 6058, C. S.; *Nampa etc. Irr. Dist. v. Brose,* 11 Ida. 474, 83 Pac. 499; *Black v. Fishburne,* 84 S. C. 451, 19 Ann. Cas. 1104, 66 S. E. 681; *Brownell v. Greenwich,* 114 N. Y. 518, 22 N. E. 24, 4 L. R. A. 685; *Sechrist v. Rialto Irr. Dist.,* 129 Cal. 640, 62 Pac. 261; Sess. Laws 1903, pp. 150, 165, 166; Sess. Laws 1907, p. 485; *Wright v. East Riverside Irr. Dist.,* 138 Fed. 313, 70 C. C. A. 603; *Stowell v. Rialto Irr. Dist.,* 155 Cal. 215, 100 Pac. 248; *Emmett Irr. Dist. v. Thompson,* 253 Fed. 316, 165 C. C. A. 98.)

Bonds should be executed by the persons holding the offices of president and secretary at the date of issue. (*Emmett Irr. Dist v. Thompson, supra; Paxton Irr. Dist. v. Conway,* 94 Neb. 205, 142 N. W. 797; *Wright v. East Riverside Irr. Dist., supra; Yesler v. City of Seattle,* 1 Wash. 308, 25 Pac. 1014.)

BUDGE, J.—This is an action brought by respondent to restrain appellant district and its board of directors from the proposed execution, issuance and sale of certain bonds. From a decree perpetually enjoining and restraining the district from executing, issuing, selling or otherwise disposing of bonds of the form proposed, and setting forth a form of bonds which the district might execute and dispose of, the district appeals.

The facts, which are stipulated, are substantially as follows: That respondent is a resident, land owner and taxpayer within the district; that the district was organized January 11, 1910; that a series of bonds in the total amount of $15,000 was authorized by the electors of the district at

an election held June 6, 1910; that bonds to the amount of $7,500, designated as first series, first issue, have been executed, issued and sold, and with respect to which no question is now raised; that Walter Watts and H. F. Erwin were respectively president and secretary of the district on July 1, 1910; that the organization of the district and the authorization of the series of bonds was confirmed by a decree of the district court on August 1, 1911.

The appellant board of directors, consisting of W. H. H. Meador, secretary, Charles McDonald, and William Barker, president, adopted a resolution on March 30, 1920, declaring an intention to sell the remaining $7,500 bonds, authorized June 6, 1910, and providing that the bonds and coupons should be dated July 1, 1910; that maturities should be figured from that date; that interest coupons falling due each January 1st and July 1st beginning January 1, 1911, and ending January 1, 1920, being coupons numbered 1 to 19, inclusive, should be detached upon sale, and that coupons numbered 20 to twice the number of years within which the bonds are to mature should remain attached to the bonds.

It was stipulated that appellants will, unless restrained, execute and dispose of such bonds, in such form, designated as "first series—second issue," principal $100 each, bonds numbered 1 to 4 inclusive, being further designated "eleven year bonds," maturing July 1, 1921, or eleven years after their date of July 1, 1910, and statutory percentages of the remaining bonds being designated as 12, 13, and successively to 20-year bonds, maturing the designated number of years after July 1, 1910; that the president and secretary will execute the bonds on behalf of the district, though not such officers on July 1, 1910; and that appellants intend that such bonds, so executed and disposed of, shall be binding obligations of the district and a charge and lien upon the lands therein, including respondent's and, beginning in 1920, instead of 1930, to levy annual assess-

ments against such lands, and collect benefits, for the payment of matured bonds and interest.

Appellants make numerous assignments of error, which present the following questions of law:

1. Whether authority for the proposed issue has been lost by lapse of time.

2. Whether the bonds of such issue should be dated January 1st or July 1st next following the election at which they were authorized.

3. Whether the bonds should begin to mature from such date or from the date of the issue of the bonds; and

· 4. Whether the bonds may be executed by the president and secretary in office at the time of issue, notwithstanding such officers were not in office at the time such bonds were authorized.

The power of municipal corporations to issue bonds depends upon a grant of authority from the legislature. (2 Dillon, Municipal Corporations, 5th ed., sec. 883, pp. 1357, 1358.) While a municipality has discretion to issue such bonds as will best accomplish the general object to secure which their issue was authorized (*Packwood v. Kittitas County,* 15 Wash. 88, 55 Am. St. 875, 45 Pac. 640, 33 L. R. A. 673), yet the legislature in granting authority therefor may impose such conditions as it may choose, and unless the conditions are complied with, the issue is unauthorized and the bonds are invalid. (19 R. C. L., Municipal Corporations, sec. 288, p. 992; *Hill v. Memphis,* 134 U. S. 198, 10 Sup. Ct. 562, 33 L. ed. 887, see also, Rose's U. S. Notes.)

The issuance, confirmation and sale of bonds of irrigation districts in this state are provided for and regulated by C. S., art. 4, chap. 175.

C. S., sec. 4359, provides for the authorization of the issuance of bonds by a two-thirds vote of the electors of any irrigation district voting in favor thereof, and C. S., sec. 4367, provides that:

"The board may sell said bonds from time to time, in such quantities as may be necessary and most advantageous. . . . .

"If, for any reason, the duly authorized bonds of a dis-.trict cannot be sold, or if at any time it shall be deemed for the best interests of the district to withdraw from sale all or any portion of an authorized bond issue, the board of directors may, in their discretion, cancel the same.

These provisions of the statute, by expressly conferring upon the board the power to withdraw from sale and cancel all or any portion of a bond issue, preclude the withdrawal of all or any portion of a bond issue in any other manner. The authorization of the issuance of the bonds by popular vote conferred upon the board a continuing authority and duty to issue the bonds or to withdraw them from issue, in whole or in part, as they might deem best for the interests of the district. Failure of the board to act promptly did not nullify the action of the electors, nor operate to relieve the board of their duty or deprive them of their authority to issue bonds which had been duly authorized, provided they had not previously withdrawn the bonds from issue in accordance with the statute, and that no showing is made of such a change of circumstances as would render it impossible to carry out the purpose pur-· suant to which the bonds were authorized. (*Baltes v. Farmers' Irr. Dist.*, 60 Neb. 310, 83 N. W. 83.)

The date which must appear upon all bonds and coupons issued by irrigation districts is prescribed by C. S., sec. 4360, which provides that:

"The bonds authorized by any vote shall be designated as a series and the series shall be numbered consecutively as authorized. The portion of the bonds of a series sold at any time shall be designated as an issue, and each issue shall be numbered in its order. . . . .

"Interest coupons shall be attached thereto, and all bonds and coupons shall be dated on January 1 or July 1 next following the date of their authorization. . . . . "

The provision of the statute in this regard is plain. But one authorization is provided for, i. e., an authorization by a two-thirds vote of the electors of the district, and all bonds of a series, regardless of when they may be issued, must bear the date of January 1st or July 1st next following the date of their authorization. (*Emmett Irr. Dist v. Thompson,* 253 Fed. 316, at 320, 165 C. C. A. 98.)

While the purpose of the statutory date thus provided for is not clear, inasmuch as it is neither the actual date of authorization nor the date of issue, from which the bonds begin to mature, yet the language of the statute is plain, and the rule is well established that if the intention of the legislature is expressed in terms which are sufficiently intelligible to leave no doubt in the mind when the words are taken in their ordinary sense, the courts will not resort to a strained interpretation to avoid any inconvenience which might follow the enforcement of the law as expressed. (25 R. C. L., Statutes, sec. 260, p. 1026.) The duty of the court ends in construing the statute in accord with the manifest purpose of the lawmakers. (*Tierney v. Ledden,* 143 Iowa, 286, 21 Ann. Cas. 105, 121 N. W. 1059.)

The next question presented is whether such bonds begin to mature from the statutory date thereof, i. e., the January 1st or July 1st next following their authorization, or from the date of the issue, and raises the further question as to what date is to be regarded as the date of issue.

Sec. 4360 provides, with respect to the maturity of bonds, that: "The bonds of each issue shall be numbered consecutively, commencing with those earliest falling due, and they shall be designated as 11-year bonds, 12-year bonds, etc. They shall be negotiable in form and payable in money of the United States as follows, to wit: At the expiration of 11 years from each issue, 5 per cent of the whole number of bonds of such issue; at the expiration of 12 years, 6 per cent; . . . . "

We think from the provision above quoted that it is clear that the district is without authority to issue bonds matur-

ing less than 11 years from the issue thereof, the statute expressly providing that a certain percentage of the bonds of each issue shall be paid yearly from 11 to 20 years after the issue shall have been made. The portion of the bonds of a series sold at any time shall be designated as an issue, and the bonds of each issue shall be payable at the expiration of 11 years, etc., from each issue. This negatives the idea that such bonds begin to mature from the January 1 or July 1 next following their authorization.

Sec. 4367, after providing that the board may sell said bonds from time to time, provides: "Before making any sale the board shall, by resolution, declare its intention to sell a specified amount of the bonds."

The board, in the present case, by a resolution adopted March 30, 1920, declared its intention to sell $7,500 in bonds as the second issue, first series. Were these bonds to be sold at one time, the date of actual sale might conveniently be considered the date of issue, but should this $7,500 in bonds be put upon the market at one time but be sold in small amounts at different times over a period of several weeks or months, the question whether the date of the resolution of the board declaring its intention to sell said bonds or the date of actual sale should be considered the date of issue would become highly important. If the latter date were to control, each purchase constituting a new issue under the statute, the board would be unable to provide in advance for an issue of a certain amount of bonds, or to definitely provide for the maturity of the bonds according to law. Furthermore, the statute contemplates that bonds shall begin to mature prior to the actual sale thereof. It is provided in C. S., sec. 4367, that: "Said board shall in no event sell any of the said bonds for less than the par or face value thereof *and accrued interest*."

As was said by the supreme court of Washington in *Yesler v. City of Seattle,* 1 Wash. 308, 25 Pac. 1014:

"In financial parlance the term 'issue' seems to have two phases of meaning. 'Date of issue' when applied to

notes, bonds, etc., of a series, usually means the arbitrary date fixed as the beginning of the term for which they run, without reference to the precise time when convenience or the state of the market may permit of their sale or delivery, and we see no reason why the act of March 26, 1890, should not have that interpretation. When the bonds are delivered to the purchaser, they will be 'issued' to him, which is the other meaning of the term. Usually, the question of interest from the date of issue to the time of sale of bonds is adjusted by payment of the face and interest by the purchaser, or the removal of coupons.'' (*Board of Directors v. Mineah* (Wash.), 192 Pac. 997.)

From the statute as a whole it appears to have been the intention of the legislature that an issue of bonds should be all or some part of a series of bonds offered for sale at any one time, and that the bonds should begin to mature from the date of the resolution by the board of directors offering the issue for sale, and that the board may continue to make issues of bonds by such resolutions until the total amount of bonds authorized shall have been exhausted.

The last question presented is whether officers of the board at the time an issue is offered for sale may sign the bonds, notwithstanding those officers were not in office at the time the bonds were authorized.

The general rule is that the government of a municipal corporation is a continuing one, and, while the personnel of officers changes, the office itself continues, and an act initiated by or during the term of one individual as a municipal officer, for and on behalf of the city, may be completed by his successor in office. (*City of Albuquerque v. Water Supply Co.*, 24 N. M. 368, 5 A. L. R. 519, 174 Pac. 217.) In the process of the issuance and sale of the bonds in question, it was legal and proper for the individuals in office to do such acts and things as were essential and proper to be done by them, as such officers, toward the execution and sale of the bonds, and such acts were not invalidated by

reason of the expiration of the term of the officers who were in office at the time the bonds were authorized.

The correct rule was announced by the United States circuit court of Appeals in the case of *Emmett Irr. Dist. v. Thompson, supra,* in the following language:

"Providing, as the Idaho statute does, for the issuance of authorized bonds in series and for their sale from time to time, all, however, to be dated on January 1st or July 1st next following the date of their authorization, and there being no express statutory provision as to who should sign them, the obvious and necessary implication is that they were authorized to be signed by the officers of the district in office at the time of their issuance and delivery."

From what has been said it follows that the bonds proposed to be issued by the district should be modified so as to provide for the maturity thereof in the statutory percentages from 11 to 20 years after the date of issue.

The cause is remanded to the district court, with instructions to modify its decree to conform with the views herein expressed, and as so modified it is affirmed.

Rice, C. J., and Dunn and Lee, JJ., concur.

McCarthy, J., being disqualified, did not sit at the hearing and took no part in the opinion.