DIXIE RUBBER CO. *v.* JOHN H. MCBEE.[*]

(*Nashville.* December Term, 1923.)

1. **LICENSES.** Rule as to conclusiveness of permit issued by the secretary of state under Blue Sky Law stated.

The action of the secretary of State in issuing permit under the Blue Sky Law is conclusive that corporation has in all respects complied with the law, in action involving validity of contract made by corporation, if documents have been filed for his examination as required by the law, but permit is not conclusive where such documents have not been filed. (*Post, pp.* 56-60.)

Acts cited and construed: Acts 1913, ch. 31.

Cases cited and approved: Goodyear v. Meux, 143 Tenn., 287; Decator v. Paulding, 14 Pet., 515; American Casualty Ins. & Sec. Co. v. Tyler, 60 Conn., 448; Ins. Co. v. Craig, 106 Tenn., 640.

Case cited and distinguished: Insurance Co. v. Craig, 106 Tenn., 621.

2. **LICENSES.** No substantial compliance with Blue Sky Law where law of incorporation referred to, but no copy filed.

Where articles of incorporation did not specify the corporate powers, but simply said that the corporate powers were "those confirmed by the provisions of Miss. Code 1906 and all laws amendatory thereof," but no copy of such laws was filed, it could not be successfully contended that there was substantial compliance with the Blue Sky Law in that such laws were in the State library or at some other point where they could be read and ascertained. (*Post, pp.* 60, 61.)

---

[*]On the question of validity of Blue Sky Laws, see notes in 15 A. L. R., 262, 24 A. L. R., 523.

On constitutionality of Blue Sky Laws, see note in L. R. A., 1917F, 524.

Dixie Rubber Co. v. McBee.

Code cited and construed: Ch. 24 (1906).

3. **LICENSES.** Corporation which fails to file reports under Blue Sky
     Law not entitled to do business in State as de facto corporation.
     Corporation which had not filed reports with secretary of State re-
     quired by Blue Sky Law was not entitled to do business in the
     state on theory that it was a *de facto* corporation. (*Post, pp.*

*Headnotes 1.  8 C. J., Blue Sky Law, p. 1130;  2.  8 C. J., Blue Sky
Law, p. 1130;  3. 8 C. J., Blue Sky Law, p. 1130.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
HON. F. H. HEISKELL, Chancellor.

RIDDICK & RIDDICK, for appellant.

STICKLEY & FITZHUGH, for appellee.

MR. L. D. SMITH, Special Judge, delivered the opinion
of the Court.

This case was decided at a former day of the term.  By
an oversight the opinion of the court was published before
disposition of a petition to rehear which was filed some
time after the decision.

The petition presents nothing new, being but a reargu-
ment of the points of law originally presented to the court.
The basis for urging the petition, aside from the alleged
errors of the former decree, is the importance of the de-
cision itself, by reason of the petitioner entailing loss to
stockholders and possibly to its creditors, and its effect
upon all other perons who have permits under the "Blue

Sky Law" (Acts [1st Ex. Sess.] 1913, chapter 31) for the sale of stock in Tennessee, because "the decision has cast a grave shadow of doubt and uncertainty, and possible confusion and chaos over all transactions which have been made since the enactment of the Blue Sky Law, and its requirement of the permit to do business."

This really affords no ground for rehearing. All cases are important; the court cannot, for the mere sake of the effect of a decision upon other cases, fail to give proper consideration and to decide each case according to the law and the facts in the case. If the decision is unfortunate in its effect upon other transactions, the result of a particular case cannot be moulded to meet such a situation. The legislature has enacted what is called the "Blue Sky Law," and, regardless of its consequences, it must be enforced. If the act of an investment corporation falls within the condemnation of the law, it is a misfortune which the court cannot be influenced by.

In the former decision of the case it was held that the complainant had failed to file with the secretary of State certain documents required by the act to be filed by investment companies with the secretary of State before offering or attempting to sell any stock, bonds, or other securities of any kind or character, and providing that any contract for the sale of securities of such investment company is illegal and void if made without compliance with this prerequisite of the statute.

It had previously been decided in *Goodyear* v. *Meux*, 143 Tenn., 287, 228 S. W., 57, that a subscription contract taken by a corporation which was in default with reference to filing the statements exacted of it by the Blue Sky Law was illegal and could not be enforced against the

subscriber. In that case attention was called to the provision of the statute to the effect that, before offering to sell any stock, bonds, or other securities of any kind or character except government, state, or municipal bonds, such corporation.shall file statements containing information particularized in the act, as well as additional statements at the close of business on December 31st and June 30th of each year, and that the act prohibited any agent of such company doing any business until his name had been registered with the secretary of State and certain fees had been paid. Attention was further called in that case to the provisions of the statute which made it unlawful for any such company to undertake to do business in the State without complying with these provisions and making such company guilty of a misdemeanor. Unquestionably, and it is not insisted to the contrary, the contract sued on in this case is illegal, if it be assumed that the complainant had not filed with the secretary of State the documents required to be filed with him by the act. Certainly, if none of said documents were filed, the contract would be illegal, and no reason is suggested why the failure to file some of them would not likewise make the contract illegal.

To escape this conclusion, it was argued at the original hearing, and reargued in the petition, that the fact that the secretary of State had issued a permit to the complainant to do business in Tennessee was conclusive that the complainant had in all respects complied with the law.

The petitioner does not contend that the assumption of power by an officer is conclusive, but the argument is that the secretary of State is granted certain discretionary and *quasi* judicial powers under the Blue Sky Law and that

his act in the exercise of that power is final, and his find-
ing has all the effect and sanction of a solemn judgment,
and the courts will not disturb it.  Numerous authorities
are referred to and cited, the effect of which are that,
where the performance of an official duty or act involves
the exercise of judgment or discretion, the exercise of such
discretionary power is not subject to review or control.
No one doubts the correctness of that doctrine, nor was
it ignored in the decision of this case.  The petition over-
looks the fact that the secretary of State, under the act,
was without any power to issue any permit or certificate
or to exercise any act of discretion with respect thereto
until after the corporation had filed the documents re-
quired by the act to be filed.  The act does make it the
duty of the secretary of State to examine the statements
and documents filed, and, if he deems advisable, may
make a detailed examination of the company's affairs, and,
if he find the company solvent and that its articles of in-
corporation, by-laws, plan of business, and proposed con-
tracts provide for a fair, just, and equitable plan for
transacting business and in his judgment promises a fair
return on the securities to be offered for sale, he must
issue a statement reciting that the investment company
has complied with the provisions of this chapter and is
permitted to do business in the State.  In so far as the
exercise of these discretionary duties imposed upon the
secretary of State is concerned, his action in issuing the
permit is conclusive in a proceeding of this sort; but,
before he is authorized to exercise any discretion whatever,
the documents must be on file for his examination, and,
if he undertakes to issue a certificate without these docu-
ments being on file, he is simply exceeding his authority,

and his permit or statement affords no hiding place for the corporation to make lawful a contract which the statute declares unlawful.

The correct principle for application in this case on this point is that stated by the court in *Insurance Co.* v. *Craig,* 106 Tenn., 621, 62 S'. W., 155.

"However, where the official is authorized by an effective law to do or not to do a given thing upon his own investigation or otherwise, the courts cannot coerce or restrain his action in reference thereto; but must permit him, in the sphere which the law has assigned to him, to exercise a free and untrammeled judgment and discretion.

"It is even his prerogative, in the first instance, to construe the law under and within which he acts, and the courts, although of the opinion that his construction is incorrect, will not interfere by mandamus or injunction. *Decator* v. *Paulding,* 14 Pet., 515; *American Casualty Ins. & Sec. Co.* v. *Tyler,* 60 Conn., 448.

"The rule of noninterference, on the part of the courts, with the free exercise of discretionary functions by public officials has been applied in cases too numerous to mention. . . .

"But, it must always be remembered that the public functionary of the class under consideration can act independently of the courts only to the extent that the law gives him that power. The law is the source of his authority, and he has no discretion beyond that conferred. All of his acts must be within the limits of that authority, and of this the courts must finally judge. Though he may undoubtedly and in every instance construe the law for himself as to discretionary matters actually within the law, he cannot by interpretation, however conclusive to

his own mind, bring within his discretion any matter that is not in fact so placed by the law when rightly interpreted by the courts. His domain is prescribed by the law, and within that domain the discretion given him is beyond the control of the courts; however, it is the province of the courts to determine the limits of that domain and keep him within its real bounds and to construe the law and define the limits of his authority in all proper cases.

"Then, it is the province of this court, and not that of the insurance commissioner, to determine finally whether or not the action proposed by him, in the present instance, is within the scope of his authority." *Insurance Co.* v. *Craig,* 106 Tenn., 640, 641, 642, 643, 62 S. W., 159, 160.

The statute makes it the duty of the secretary of State to examine the statements and documents so filed; he has the authority to have made a detailed examination of the investment company's affairs. He is given discretionary power upon investigation if he find the investment company solvent and its articles of incorporation, its by-laws, plan of business, and proposed contracts provide for a fair, just, and equitable plan for the transaction of business and if, in his judgment, it promises a fair return on the stock, he should issue the permit. The secretary of State is also given general supervision and control over these investment companies, but the act nowhere provides for any discretion on the part of the secretary of State in regard to the filing of the specified documents. He has no power to exercise any discretion or judgment with respect to it until these documents have been filed. Any doubt upon this subject must necessarily be removed when we find that the act expressly provides that no investment company can offer or attempt to sell any stock until after

it has filed these documents in the office of the secretary of State. The effort to do so is made unlawful and subjects the investment company to liability for a misdemeanor and prescribes punishment accordingly. The conclusion is irresistible that the transaction was illegal if we assume a failure upon the part of the investment company to file the documents with the secretary of State.

It is again urged upon us that there was substantial compliance with the statutory requirements. We are unable to find anything in the petition to induce a change from the opinion that material and essential documents required by the statute were not in fact filed. There was no pretense of the filing of a statement showing in detail the full plan upon which this company proposed to transact business. There was no copy of the laws of the State under which the complainant was incorporated filed. The importance of the filing of such law is emphasized when the articles of incorporation are examined. These articles of incorporation do not specify the rights and powers of the corporation. It simply says:

"The rights and powers that may be exercised by this corporation are those confirmed by the provisions of chapter 24, Miss., Code of 1906, and all laws amendatory thereof."

Without the filing of these laws, the charter which was filed would be absolutely meaningless so far as furnishing knowledge of the rights and powers of the corporation. It will not do to say that these laws were in the State Library or at some other point where they could be read and ascertained, because the statute requires that a copy of the law shall be filed with the secretary of State along with the application to do business.

The statute requires the filing of an itemized account of the company's actual financial condition and the amount of its property and liabilities. The statement which was filed does give in a general way the amount of the company's property and liabilities but it is far from an itemized account of its actual financial condition. But, if it be conceded that this particular statement is sufficient, the absence of the others constitutes a default of the requirements of the statute and renders the contract illegal and void. The statute requires every investment company, even after it has obtained a permit to do business, to file at the close of business on December 31st and June 30th of each year, and at such other times as may be required by the secretary of State, a statement of its financial condition and the amount of its assets and liabilities. A company failing to file these reports by the very language of the act forfeits any right to do business in the State. The evidence shows that these reports were not filed with the secretary of State. The transaction in question took place July 1, 1920. It does not appear from the papers on file just when the application of complainant was made to the secretary of State. There are two such applications in the file; neither one is dated nor does it appear when either one was actually filed with the secretary of State. One of them was sworn to on the 18th of March, 1920, and other papers dated that day would indicate the application was filed at that time. Neither does the date upon which the permit was issued appear. There was due to be filed on June 30, 1920, before this transaction took place, a report of its financial condition.

The argument is again advanced that complainant was at least a *de facto* corporation. There is no contention

here that complainant was not a corporation. If it were a corporation *de jure,* it could only transact the business of an investment company by complying with the requirements of the statute, and its attempted contracts would be illegal in any event without compliance with the statute. The argument as to the powers of a *de facto* corporation presented in the petition to rehear is both able and interesting, but it has no application to the case whatever.

Petition to rehear is denied.