(July 13, 1926.)

HARRY McKINLAY, Respondent, v. JAVAN MINES COMPANY, a Corporation, Appellant.

[248 Pac. 473.]

BLUE SKY LAW—NONCOMPLIANCE—APPEAL AND ERROR—LICENSES.

1. On appeal from judgment for services in selling corporate stock, specification in brief that evidence was insufficient to sustain verdict *held* to present question of plaintiff's failure to comply with blue sky law, in view of C. S., sec. 6886.

2. In action for services in sale of corporate stock, failure to ask instruction as to plaintiff's compliance with blue sky law does not preclude review of evidence showing noncompliance.

3. Agent selling corporate stock has burden of proving his compliance with blue sky law.

4. Appeal on insufficiency of evidence to sustain verdict may be taken direct to *supreme court without necessity of motion for new trial.*

5. Under C. S., secs. 5306, 5309–5311 and 5317, recovery for services in sale of corporate stock cannot be had, in absence of showing of compliance with blue sky law.

---

Publisher's Note.

4. See 2 R. C. L. 98.

See Appeal and Error, 3 C. J., sec. 758, p. 858, n. 87; sec. 885, p. 979, n. 52; sec. 1588, p. 1414, n. 65.

Licenses, 37 C. J., sec. 140, p. 261, n. 69; sec. 142, p. 261, n. 84.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. William A. Babcock, Judge.

Action to recover for services rendered. Judgment for plaintiff. *Reversed and remanded.*

S. L. Hodgin, Stephan & North, for Appellant.

The evidence in this case is insufficient to sustain the verdict. (13 C. J. 421, 422, 713, and cases cited; C. S., secs. 5311, 5317; 6 R. C. L. 702 and cases cited; 17 R. C. L. 560; *Zimmerman v. Brown,* 30 Ida. 640, 166 Pac. 924; *Goodyear v. Meaux,* 143 Tenn. 287, 228 S. W. 57; *Edward v. Ioor,* 205 Mich. 617, 15 A. L. R. 256, 172 N. W. 620.)

The contract, if such existed between appellant and respondent, was void and recovery cannot be had by respondent for the reason that respondent did not comply with a penal statute prohibiting and making a crime the rendering of the services agreed to be performed by him, without compliance with such statute. (*Zimmerman v. Brown, supra;* note, 12 L. R. A., N. S., 586; *Goodyear v. Meaux, supra; Edward v. Ioor, supra.*)

E. V. Larson, for Respondent.

A person may recover for services rendered, or goods sold, even though he has failed to comply with the licensing statute. (*Vermont Loan & Trust Co. v. Hoffman,* 5 Ida. 376, 95 Am. St. 186, 49 Pac. 314, 37 L. R. A. 509; *Mandelbaum v. Gregovich,* 17 Nev. 87, 45 Am. Rep. 433, 28 Pac. 121; *Rock Island Lumber Co. v. E. A. Wales Mill Co.,* 112 Kan. 623, 212 Pac. 97; *Hughes v. Snell,* 28 Okl. 828, Ann. Cas. 1912D, 374, 115 Pac. 1105, 34 L. R. A., N. S., 1133.)

The fact that respondent had not obtained a permit, did not make a sale of stock by him void, in as much as such sales are not prohibited, but the statute provides a penalty to be imposed upon a person or agent who fails to procure

the necessary permit. (C. S., secs. 5311, 5317; *Vermont Loan & Trust Co. v. Hoffman, supra.*)

JOHNSON, Commissioner.—This is an action brought by respondent against the appellant company for the reasonable value of services performed in selling the capital stock of the appellant company. The company denied the employment, and as an affirmative defense alleged that the services performed were fully paid for by the delivery of stock in the appellant company, and also alleged that the respondent was not entitled to recover because he had failed to register with the department of commerce and industry as an agent for such company. The case was tried before a jury, and it returned a verdict in favor of the respondent. This appeal is from the judgment.

Appellant assigns but three errors: First, that the evidence is insufficient to sustain the verdict; second, that the court erred in the giving of one instruction; and, third, that the court erred in overruling appellant's motion for judgment *non obstante veredicto.* In view of the conclusions reached, it becomes unnecessary to discuss the second and third assignments.

[1] It has been suggested, though not by respondent, that the specification of the insufficiency of the evidence in appellant's brief, is not sufficient to present the question of respondent's failure to comply with the "blue sky law." Appellant's brief specifies as error that—

"The court erred in rendering judgment on the verdict for the reason that the evidence is insufficient to sustain the verdict."

Under points and authorities, it recites:

"The evidence in this case is insufficient to sustain the verdict."

"The contract, if such existed between appellant and respondent, was void and recovery cannot be had by respondent for the reason that respondent did not comply with a penal statute prohibiting and making a crime the rendering of the

services agreed to be performed by him, without compliance with such statute."

In support of these points, the appellant cites the sections of the "blue sky law" applicable and numerous authorities supporting the contention. In argument upon this point, appellant says:

"It will be observed from the pleadings and the evidence in this case that the contract sued upon by respondent was one for services rendered the appellant company in the sale of its corporate stock. . . . .

"It is a general rule recognized by the courts that recovery cannot be had upon a contract to do an act prohibited by law and made by law a criminal act."

In numerous other instances the point is referred to, leaving no question as to the contention of appellant. In fact, appellant's brief is almost entirely given to this contention. The brief of respondent argues the point at length. The oral argument upon both sides was directed specifically to the point involved. Respondent has at no time, by brief or argument, contended or even hinted that this specification was insufficient to present for determination the question of the applicability of the "blue sky law" to respondent's right to recover.

[2] It may be said that no instruction was asked or given upon this point, and thus the jury's attention was not called to it; but the giving or absence of instruction can have no bearing upon the sufficiency of the specification of error or the insufficiency of the evidence. An appeal upon grounds of the insufficiency of the evidence could be taken regardless of instructions. A verdict in the face of the evidence could not be held to be a finding that plaintiff had complied with the "blue sky law," no matter what the instructions.

To refuse to pass upon the error because of insufficiency of the specification would be not only to err in the face of the matters quoted from appellant's brief, but voluntarily to advance a reason for not considering the merits when no such reason has been advanced or hinted at by respondent,

who, on the contrary, has argued the point at length as though properly here. By the same argument, respondent's brief is not only insufficient to raise the insufficiency of the specification of error, but wholly fails to raise it.

[3] The proof establishes that plaintiff's transaction was within the "blue sky law," and it devolved upon him to prove his compliance therewith. (*Eckert v. Collot*, 46 Ill. App. 361; 9 C. J. 646.) Failure to make such proof constitutes an insufficiency of the evidence to sustain the verdict. The plaintiff's own testimony affirmatively establishes this failure. [4] An appeal, based upon the insufficiency of the evidence to sustain the verdict, may be taken direct to this court without the necessity of a motion for a new trial. (*Buster v. Fletcher*, 22 Ida. 172, 125 Pac. 226.)

By C. S., sec. 6886, the reporter's transcript is "deemed adequate to present for review . . . . any question of insufficiency of evidence which may afterward be properly presented by specification of insufficiency in the brief on appeal."

The object of requiring particularity in the specifications of insufficiency of the evidence to sustain a verdict, is that the court's attention may be directed to specific instances in the record or specific lack of evidence, and it not be compelled to search the entire record. This requirement of particularity was never intended as a cloak for refusal to consider the specification, if by fair intendment it could be said to present the point. Nor is there any necessity, by rule or otherwise, that the particulars be phrased in any precise language, or be found upon any particular page of the brief. Surely, the specifications of particularity of the insufficiency quoted could not be held themselves insufficient, if they had been included under "Assignments of Error," instead of "Points and Authorities" and "Argument." In fact, the assignment of error is sufficient. The particularity follows quite properly under the latter two subdivisions. The brief of appellant has not failed to specify, not only the insufficiency, but of what it consisted.

[5] C. S., sec. 5306, requires every investment company,

before offering or attempting to sell its stock, to file in the office of the department of commerce and industry—

"A statement showing in full detail the plan upon which it proposes to transact business. A copy of all contracts, bonds, or other instruments which it proposes to make with or sell to its contributors. A statement which shall show the name and location of the investment company, and an itemized account of its actual financial condition, and the amount of its property and liabilities, and such other information, touching its affairs, as said department of commerce and industry may require."

C. S., sec. 5310, provides that—

"It shall not be lawful . . . . for any such investment company to transact business on any other plan than that set forth in the statement required to be filed by section 5306, or to make any contracts other than that shown in the copy of the proposed contract required to be filed by section 5306, until a written statement showing in full detail the proposed new plan of transacting business and a copy of the proposed new contract shall have been filed with the department, in like manner as provided in regard to the original plan of business and proposed contract, and the consent of the department obtained as to making such proposed new plan of transacting business and proposed new contract."

After the filing of the statements and documents, C. S., sec. 5309, provides that—

"It shall be the duty of the department of commerce and industry to examine the statements and documents so filed, and if said department shall deem it advisable it shall make or have made a detailed examination of such investment company's affairs, which examination shall be at the expense of such investment company, as hereinafter provided.

"If the department finds that such investment company is solvent, that its articles of incorporation or association, its constitution and by-laws, its proposed plan of business and proposed contract contain and provide for a fair, just and equitable plan for the transaction of business, and in its judgment promise a fair return on the stock, bonds and other

securities by it offered for sale, the department shall issue to such investment company a statement reciting that such company has complied with the provisions of this chapter, that detailed information in regard to the company and its securities is on file in the office of the department of commerce and industry for public inspection and information, that such investment company is permitted to do business in this state, and such statement shall also recite in bold type that the department in no wise guarantees the securities to be offered for sale by such investment company.

"But if said department finds that such articles of incorporation or association, charter, constitution and by-laws, plan of business or proposed contract contain any provision that it is unfair, unjust, inequitable or oppressive to any class of contributors, or if the department decides from its examination of its affairs that said investment company is not solvent and does not intend to do a fair and honest business, and in the department's judgment does not promise a fair return on the stocks, bonds or other securities by it offered for sale, then the department shall notify such investment company in writing of its findings, and it shall be unlawful for such company to do any further business in this state until it shall so change its constitution and by-laws, articles of incorporation or association, its proposed plan of business and proposed contract and its general financial condition in such manner as to satisfy the department of commerce and industry that it is solvent, and its articles of incorporation or association, its constitution and by-laws, its proposed plan of business and proposed contract provide for a fair, just and equitable plan for the transaction of business, and do, in the judgment of the department, promise a fair return on the stocks, bonds and other securities by it offered for sale."

In order for the department to comply with this section, and determine whether the company intends "to do a fair and honest business," and whether the stocks offered for sale "promise a fair return on the stock," it must necessarily pass on the question of the commission to be allowed

or the compensation the investment company proposes to pay the agent, or agents, offering such stock for sale. Otherwise, the amount allowed the agent by the company might be so large that very little of the proceeds from a sale of the stock would go into the treasury of the company, thereby destroying all chance of the stock ever becoming of any value whatever.

C. S., sec. 5311, as to agents, provides that—

"Any investment company may appoint one or more agents, but no such agent shall do any business for said investment company in this state until he shall first register with the department of commerce and industry as agent for such investment company, and for each of said registrations there shall be paid to the department of commerce and industry the sum of $1. Such registration shall entitle such agent to represent said investment company as its agent until the 1st day of March following, unless said authority is sooner revoked by the department; and such authority shall be subject to revocation at any time by the department for cause appearing to it sufficient."

By authorizing the department to revoke the agent's license at any time, for cause appearing to it sufficient, the legislature no doubt had in mind that an agent might be guilty of misrepresentation in the sale of the investment company stock without any knowledge of such misrepresentations by any of the officers of the company. If the agent were not subject to the control of the department, an unscrupulous agent would have it in his power to nullify the very purpose of the act,—the protection of the public.

C. S., sec. 5317, provides:

" . . . . Any agent or agents who shall do or attempt to do any business for any investment company, domestic or foreign, in this state, which agent is not at the time duly registered and has fully complied with the provisions of this chapter, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined for each offense not less than $100 nor more than $5,000, or by imprisonment in

the county jail for not more than 90 days, or both such fine and imprisonment, at the discretion of the court.''

A plain reading of the ''blue sky law'' act of the legislature shows that its sole purpose is the protection of the public, and that it was not passed for the purpose of raising revenue. The legislature has also recognized this by repeatedly making an appropriation out of the general fund for salaries and expenses under the ''blue sky law.''

The respondent admitted on the witness-stand that he had no permit under the ''blue sky law,'' and that he had never made any application to obtain a permit to sell the stock. It is conceded in respondent's brief that he was not registered. It is therefore clear that under the plain terms of the act heretofore quoted, governing agents selling stock, the respondent was guilty of a crime when he sold the stock. In other words, while admitting the commission of a crime, he is now asking the court to allow him to recover the reasonable value of his services while so engaged in such criminal act.

The brief of the respondent states the respondent's position as follows:

''In conclusion would desire to say: that from all the evidence in this case, it appears that the respondent was employed by the appellant to sell a certain number of its shares of stock, that respondent did in fact sell the stock and procured for the appellant's treasury something over $20,000. That thereafter the appellant refused to pay for such services, and now relies upon the defense that respondent at the time of sale of said stock did not have the required agent's permit.

''It would seem unequitable to permit such defense under all of the circumstances. The jury found by its verdict that the respondent was in fact employed by the appellant as its agent. There is nothing in the verdict to show whether or not the appellant made any inquiry as to whether respondent had the necessary permit or not. It would be reasonable to suppose that appellant would have demanded such permit on the part of the respondent, unless appellant was at that

time paving the way to obtain respondent's services without pay."

The supreme court of the United States, in concluding the case of *McMullen v. Hoffman*, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. ed. 1117, expresses our answer to respondent's position in the following language:

" . . . . To permit a recovery in this case is in substance to enforce an illegal contract, and one which is illegal because it is against public policy to permit it to stand. The court refuses to enforce such a contract, and it permits defendant to set up its illegality, not out of any regard for the defendant who sets it up, but only on account of the public interest. It has been often stated in similar cases that the defense is a very dishonest one, and it lies ill in the mouth of the defendant to allege it, and it is only allowed for public considerations and in order the better to secure the public against dishonest transactions. To refuse to grant either party to an illegal contract judicial aid for the enforcement of his alleged rights under it tends strongly towards reducing the number of such transactions to a minimum. The more plainly parties understand that when they enter into contracts of this nature they place themselves outside the protection of the law, so far as that protection consists in aiding them to enforce such contracts, the less inclined will they be to enter into them. In that way the public secures the benefit of a rigid adherence to the law."

In the same case (174 U. S. at page 654, 19 Sup. Ct. 845, 43 L. ed. at page 1123), the court said:

"The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract. In cases of this kind the maxim is *Potior est conditio defendentis*." (Citing a large number of authorities.)

This court stated, in the case of *Zimmerman v. Brown,* 30 Ida. 640, at page 645, 166 Pac. 924, that—

"Where a license is prescribed by statute not as a revenue measure, but for the protection of the public, as a requisite to a particular trade or business, . . . . contracts violative thereof because of lack of the license are void,"

—and quoted from 25 Cyc. 633, the following rule, with approval:

"The rule is that where a statute prohibits and makes it highly penal for any person to pursue a given business or calling without having previously obtained a license, such person cannot recover for his services performed while pursuing such business or calling, notwithstanding a contract providing therefor."

Applying the language used in that case to the facts in this case, we again say that there can be no doubt that the statute in question was passed, not for the mere purpose of raising revenue, although it does provide for a fee for the registration of agents, but as a public regulation designed to protect those who purchase stock in an investment company. Hence, it comes squarely within the rule stated in the above-cited cases.

The judgment should be reversed, and the court directed to enter judgment in favor of the appellant.

William A. Lee, C. J., and Givens and Taylor, JJ., concur.

PER CURIAM.—The foregoing opinion is hereby adopted as the opinion of the court. The judgment is reversed, and the cause remanded with instructions to enter judgment in favor of the appellant. Costs are awarded to appellant.

WM. E. LEE, J., Dissenting.—The judgment, from which this appeal is prosecuted, was obtained on account of services performed in the sale of mining stock in appellant, a Nevada corporation. For a reversal of the judgment three alleged errors are assigned: First, that the evidence is in-

sufficient to sustain the verdict; Second, that the court erred in giving instruction No. 3; Third, that the court erred in denying the motion for judgment *non obstante veredicto*.

While there was much testimony to the contrary, which the verdict evidences was not fully credited by the jury, there is in the record ample evidence to show that a contract existed between appellant and respondent under which the stock was sold and that respondent had not been paid for his services. It is on the theory that no contract existed between appellant and respondent that it is contended that instruction No. 3 was erroneous. The instruction is not otherwise criticised; and it is admitted by appellant that the statement of the law as contained in instruction No. 3 "would probably" be the law on the theory that a contract existed between the parties. The holding that the evidence is sufficient to establish the existence of the contract and that respondent had not been paid for his services, disposes of the second as well as the first assignment of error. The third assignment of error should be treated as waived since the brief contains no citation of authority nor argument to the effect that the court erred in denying the motion for judgment *non obstante veredicto*.

Appellant contends that the judgment cannot stand because respondent had not complied with the "Blue Sky" laws of this state in the sale of mining stock. The assignments of error do not raise this question. Under the assignment of the insufficiency of the evidence to sustain the verdict, there are no specifications with respect to which the evidence is alleged to be insufficient. This court is not justified in going beyond the assignments of error to find a reason to reverse the judgment of the district court. Respondent's evidence was wholly directed to establish the existence of a contract between the parties and that he had not been paid for his services. On the other hand, appellant's efforts were principally exerted to disprove the existence of the contract and to show that respondent had been fully paid for his services. Whether the trial judge thought

the evidence was not sufficient to justify an instruction on the question of compliance with the "Blue Sky" law or overlooked that feature of the defense, the record does not disclose. However, the fact remains that no instruction on that subject was requested by appellant or given by the court. There was sufficient evidence to sustain the verdict on the issues submitted to the jury. If there were any error in the trial, it arose out of the failure to instruct the jury on all the issues presented by the pleadings, but no question of this kind is before us.

I am authorized to state that Mr. Justice Budge concurs in this dissenting opinion.