(No. 5094. April 4, 1929.)

BOISE ASSOCIATION OF CREDIT MEN, LIMITED, a Corporation, Respondent, v. LESTER C. SEAWELL, Appellant.

[276 Pac. 318.]

474

Freehafer & McClure, for Appellant.

J. P. Pope, for Respondent.

BAKER, District Judge.—The appellant in this court, defendant in the trial court, insists that pending the approval of application, in all respects regular and complete, by an investment company for authority to sell its stock and its application for the issuance of licenses to its agents, as required by the provisions of the "Blue Sky Law" of this state, all contracts entered into by such agents on behalf of such investment company are illegal and unenforceable. The question is presented in the following manner: On August 11, 1920, the Payette Cooperative Company filed in the office of the department of commerce and industry, as then required by C. S., sec. 5306, its application, in all respects complete and regular, for authority to sell its stock in this state and its application, pursuant to C. S., sec. 5311, for licenses for two agents. On September 9, 1920, the statement and certificates of registration or licenses were issued. In the meantime and on August 30, 1920, the appellant, Seawell, had purchased, through one of these agents, stock in the company. Some two years later the company made an assignment of its property to the plaintiff for the benefit of its creditors. This suit was instituted by the assignee to recover judgment on the note. From the judgment of recovery entered by the trial court when the facts were made to appear as above the defendant has appealed.

It was stipulated by the parties and found by the court that prior to the execution of the note sued upon the Payette Cooperative Company had filed the documents required

by C. S., sec. 5306, had paid the fee, had registered its agents and applied for the issuance of licenses and had paid the fee fixed by C. S., sec. 5311. The statement and certificate of registration were ultimately, but after the transaction here involved, issued.

By the provisions of C. S., sec. 5306 every investment company "before offering or attempting to sell any stocks . . . . to any person . . . . or transacting any business whatever in this state" except the preparation of the documents required "shall *file* in the office of the department of commerce and industry" (now finance) certain documents therein enumerated and pay a filing fee. C. S., sec. 5310, provides that it shall not be lawful for any investment company to transact any business "until it shall have *filed* the papers and documents provided for." C. S., sec. 5309, makes it the duty of the department to examine the documents filed and, if deemed advisable, to make a detailed examination of the investment company's affairs and if it finds certain matters to be true to issue to the company a statement to that effect. If, however, the department finds contrary facts to be true, it must in writing notify the investment company of its findings "and it shall be unlawful for such company to do any *further* business in the state" until it shall conform to the requirements of the act. C. S., sec. 5311, authorizes the appointment of agents but provides that no agent shall do any business for the investment company until he shall have registered with the department. By the provisions of C. S., sec. 5317, it is made a crime for an agent to sell stock or for the company or its agents to do business when the provisions of the chapter have not been complied with.

Appellant argues that since the act is not a revenue measure, but one enacted for the sole purpose of protecting the credulous investing public from unsubstantial and hazardous investments offered by glib-tongued salesmen who know or respect no restraints either of fact or conscience (*Ashley & Rumelin v. Brady*, 41 Ida. 160, 238 Pac. 314; *McKinlay v. Javan Mines Co.*, 42 Ida. 770, 248 Pac. 473)

this court should interpret the act so as to continue the protection which the legislature intended to provide until the department, at its convenience—for no time is fixed within which it must act—makes such examination as it deems advisable and issues the statement; that any other construction would greatly impair the efficacy of the act. Appellant seeks to invoke the rule of statutory construction, many times stated by this court, that in construing a statute the court should take into consideration the object and purpose of the law and of the legislature in enacting the same (*Wood v. Independent School Dist.*, 21 Ida. 734, 124 Pac. 780; *Sharp v. Brown*, 38 Ida. 136, 221 Pac. 139). Appellant argues that the application of this rule requires that it be held that all contracts entered into before the issuance of the statement of compliance by the department or with an agent before the issuance of certificate of registration are illegal.

We are not unmindful of the rule or its value in reaching a correct determination of the meaning of a doubtful or ambiguous statute. To ascertain and declare the intention of the legislature as that intention is manifested by the language employed is the primary rule of statutory construction (*Steinour v. Oakley State Bank*, 32 Ida. 91, 177 Pac. 843; *Turner v. Roseberry Irr. Dist.*, 33 Ida. 746, 198 Pac. 465). If the language used cannot fairly and reasonably be said to include a particular act, no rule of construction authorizes its inclusion. The rule contended for is employed to resolve doubt. When from the wording of an act there is no room for doubt there is no reason to apply the rule. It is a rule of construction or interpretation only—merely a rule to be invoked in an effort to ascertain legislative intent. We are not permitted to read into a statute a provision not found therein or to extend its operation to cases not clearly contemplated or to justify judicial legislation by the application of the rule. The rule for the liberal construction of statutes "with a view to effect their objects and to promote justice" as enjoined by C. S., sec. 9444, does not authorize a court to include within the provisions of a

statute, as criminal, acts that are not clearly within its terms (*In re Moore*, 38 Ida. 506, 224 Pac. 662).

■ The legislatures of most other states in the enactment of similar statutes, by plainly providing that ·the actual issuance of the certificate should precede the right to do business, left no doubt as to their intention. If the legislature of this state had intended to make the issuance of the statement a condition precedent to the right to transact any business, many expressions as precedents existed and the intention could have been so easily evidenced. It seems plain that the legislature intended that the right of an in-· vestment company to do business should date from the time of filing complete documents required by the act and not from the time the department, at its convenience, had issued the statement. Whether the failure of the legislature to continue the prohibition of the act down to the time of the issuance of the statement was deliberate or accidental and contrary to design, the omission is equally binding upon the courts. In either case we are not authorized to supply the omission. The prohibition can be extended only through legislative pronouncement.

The Tennessee statute bears a striking resemblance to the "Blue Sky Law" of this state. In *Dixie Rubber Co. v. McBee*, 150 Tenn. 53, 262 S. W. 32, the right of the company to do business was tested by the fact of filing and the sufficiency of the documents filed. The permit issued by the Secretary of State was not regarded as a commission to do business but only as evidence of the filing which conferred the right to do business. In that case it was held that the permit was not conclusive but that an independent inquiry might be made in court of the filing. Upon a finding that the company had failed to file the documents required by the act, though the permit had been issued, it was held that the transaction involved was illegal.

It follows that the defense urged is without merit. The judgment appealed from is affirmed with costs.

Budge, C. J., Givens and Wm. E. Lee, JJ., and Adair, D. J., concur.